# EXHIBIT  H

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| **SENTINEL MANAGEMENT GROUP, INC.,** | **CASE NO. 07 B 14987** |
| Debtor. | Hon. John B. Squires |
| **FREDERICK J. GREDE**, as Chapter 11 Trustee for Sentinel Management Group, Inc., | |
| Plaintiff, | |
| v. | **ADV. NO. 07-00981** |
| **PHILIP M. BLOOM, ERIC A. BLOOM, CHARLES K. MOSLEY, SENTINEL INVESTMENT GROUP, INC., SENTINEL FINANCIAL SERVICES, INC., SENTINEL MANAGEMENT INTERNATIONAL, LTD., FOUNTAINHEAD INVESTMENTS, INC., EB TRUST 2005, SYBIL BLOOM REVOCABLE TRUST, PHILIP M. BLOOM REVOCABLE TRUST, PHILIP M. BLOOM REMAINDER TRUST, ERIC A. BLOOM LIVING TRUST and PHILIP M. BLOOM GRANTOR ANNUITY TRUST,** | |
| Defendants. | |

## MEMORANDUM OF LAW IN SUPPORT OF
## THE BLOOM DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 7

    A.    The Parties ................................................................................................ 7

    B.    The Sentinel Accounts At Issue ................................................................ 8

        1.    The "SEG" accounts ..................................................................... 8

        2.    The "House" account ..................................................................... 8

    C.    The Allegations Of The Complaint All Concern Defendants' Alleged Misuse Or Misappropriation Of The Property Of Sentinel's Customers, Not Sentinel Itself ...................................................................................... 9

        1.    Alleged improper use of customer assets for leveraging .......................... 10

        2.    Alleged diversion of customer assets to collateralize loans ..................... 10

        3.    Alleged commingling of customer assets ................................................ 10

        4.    Alleged diversion and misallocation of interest income from customer accounts ........................................................................... 11

        5.    Alleged extraction of unlawful trading profits from customer accounts .................................................................................. 11

        6.    Alleged improper allocation of trades for customer accounts ................ 11

        7.    Alleged false and misleading customer statements ................................. 12

    D.    Two Of Sentinel's Customers Already Have Filed Putative Class Actions In District Court Which Seek To Recover The Same Alleged Investment Losses Sought Here By The Trustee ...................................................... 12

THE STANDARD ON THIS MOTION TO DISMISS ............................................. 13

ARGUMENT ............................................................................................................. 13

I.    THE TRUSTEE LACKS STANDING TO PURSUE CLAIMS THAT SEEK TO RECOVER THE INVESTMENT LOSSES ALLEGEDLY SUFFERED BY SENTINEL'S CUSTOMERS (COUNTS 9-12, 15 AND 16) ......................................... 13

II.  THE TRUSTEE HAS FAILED TO STATE A CLAIM FOR AVOIDANCE OF ANY ALLEGED "INSIDER" TRANSFERS (COUNTS 1-8, 19) ................................. 16

  A.  The Trustee Lacks Standing To Avoid Transfers Of Property In Which Sentinel Does Not Have An Interest .................................................................... 16

    1.  As a matter of settled law, the Trustee cannot seek recovery of assets in which Sentinel does not own an equitable interest .................... 16

    2.  The Trustee concedes that Sentinel does not own an equitable interest in any its "SEG" customer funds ................................................ 19

    3.  The Trustee also concedes that Sentinel does not own an equitable interest in any funds invested in its "House" portfolio ........................... 21

  B.  Under Sec. 546(e) Of The Code, The Trustee Cannot Avoid "Settlement Payments" Made By A "Commodity Broker" ..................................................... 22

III.  THE TRUSTEE LACKS STANDING TO PURSUE STATE LAW DIVIDEND CLAIMS (COUNTS 13 AND 14) ................................................................... 26

CONCLUSION ...................................................................................................................... 27

## TABLE OF AUTHORITIES

***Federal Cases***

*Asch v. Teller, Levit & Silvertrust, P.C.,*
    No. 00 C 3290, 2003 U.S. Dist. LEXIS 16747 (N.D. Ill. Sept. 23, 2003) ........................ 14

*Begier v. IRS,*
    496 U.S. 53 (1990) ........................................................................................................ 19

*Bevill, Bresler & Shulman Asset Mgmt. Corp. v. Spencer Savings & Loan Ass'n (In re
    Bevill, Bresler & Shulman Asset Mgmt. Corp.),*
    878 F.2d 742 (3d Cir. 1989) .......................................................................................... 24

*Caplin v. Marine Midland Grace Trust Co.,*
    406 U.S. 416 (1972) ................................................................................................ 14, 17

*Conley v. Gibson,*
    355 U.S. 41 (1957) ........................................................................................................ 13

*Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.),*
    325 B.R. 671 (Bankr. S.D.N.Y. 2005) ........................................................................... 25

*Henson v. CSC Credit Serv.,*
    29 F.3d 280 (7th Cir. 1994) .......................................................................................... 12

*Indemnified Capital Invs., SA. v. R.J. O'Brien & Assocs.,*
    12 F.3d 1406 (7th Cir. 1993) ................................................................................... 14, 15

*Jenkins v. Chase Home Mortg. Corp. (In re Maple Mortg.),*
    81 F.3d 592 (5th Cir. 1996) .......................................................................... 18, 19, 20

*Jonas v. Resolution Trust Corp. (In re Comark),*
    971 F.2d 322 (9th Cir. 1992) ........................................................................................ 24

*Kaiser Steel Corp. v. Charles Schwab & Co.,*
    913 F.2d 846 (10th Cir. 1990) ...................................................................................... 24

*Kaiser Steel Corp. v. Pearl Brewing Co. (In re Kaiser Steel Corp.),*
    952 F.2d 1230 (10th Cir. 1991) .............................................................................. 24, 25

*Kikson v. Underwriters Labs.,*
    No. 02 C 8265, 2005 U.S. Dist. LEXIS 6269 (N.D. Ill. Mar. 31, 2005) ........................ 14

-iii-

*Koch Refining v. Farmers Union Cent. Exchange, Inc.*
 831 F.2d 1339 (7th Cir. 1987) .............................................................17

*Loranger Mfg. Corp. v. PNC Bank (In re Loranger Mfg. Corp.),*
 324 B.R. 575 (Bankr. W.D. Pa. 2005) ....................................................23

*Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.),*
 181 F.3d 505 (3d Cir. 1999)....................................................................24

*Marrs-Winn Co. v. Gilberson Elec. (In re Marrs-Winn Co.),*
 103 F.3d 584 (7th Cir. 1996) .............................................................17, 18

*Official Comm. of Unsecured Creditors v. Clark (In re Nat'l Forge Co.),*
 344 B.R. 340 (Bankr. W.D. Pa. 2006) ....................................................23

*Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group (In re Hechinger Inv.*
 *Co.),* 274 B.R. 71 (Bankr. D. Del. 2002) ............................................23, 24

*Papapetropoulous v. Milwaukee Transp. Serv., Inc.,*
 795 F.2d 591 (7th Cir. 1986) ..................................................................13

*Poss v. Morris (In re Morris),*
 260 F.3d 654 (6th Cir. 2001) ..................................................................19

*QSI Holdings, Inc. v. Alford (In re Quality Stores, Inc.),*
 355 B.R. 629 (Bankr. W.D. Mich. 2006)..................................................25

*Scholes v. Schroeder,*
 744 F. Supp. 1419 (N.D. Ill. 1990) .........................................................15

*Solow v. Reinhardt (In re First Commercial Mgmt. Group, Inc.),*
 279 B.R. 230 (Bankr. N.D. Ill. 2002) ......................................................19

*Steinberg v. Buczynski,*
 40 F.3d 890 (7th Cir. 1994) ....................................................................13

*Terry v. June,*
 432 F. Supp. 2d 635 (W.D. Va. 2006) .....................................................19

*Venture Assoc. Corp. v. Zenith Data Sys. Corp.,*
 987 F.2d 429 (7th Cir. 1993) ....................................................................9

*Wayne Film Sys. Corp. v. Film Recovery Sys. Corp.,*
 64 B.R. 45 (N.D. Ill. 1986) .....................................................................14

*Williams v. California 1st Bank,*
    859 F.2d 664 (9th Cir. 1988) .............................................................................14

**State Cases**

*Hamilton Bancshares, Inc. v. Leroy,*
    131 Ill. App. 3d 907, 476 N.E.2d 788 (4th Dist. 1985) ...................................18

*Regan v. Ivanelli,*
    246 Ill. App. 3d. 798, 617 N.E.2d 808 (2d Dist. 1993) ...................................16

**Docketed Cases**

*Shatkin v. Bloom, et al.,*
    No. 07 CV 5076 (N.D. Ill.) ..............................................................................12

*McKinlay v. Bloom, et al.,*
    No. 07 CV 5759 (N.D. Ill.) ..............................................................................12

**Statutes And Rules**

Fed. R. Civ. P. 12(b)(6) ...............................................................................................6

17 C.F.R. § 1.20 .........................................................................................................20

17 C.F.R. § 4 ..............................................................................................................20

17 C.F.R. § 275.206(4)-(2) .........................................................................................20

7 U.S.C. § 6(d)(2) .......................................................................................................20

11 U.S.C. § 101 ....................................................................................................24, 25

11 U.S.C. § 502 ............................................................................................................1

11 U.S.C. § 510 ............................................................................................................1

11 U.S.C. § 544 ............................................................................................................4

11 U.S.C. § 546 ...........................................................................................6, 23, 24, 25

11 U.S.C. § 547 ...........................................................................................4, 16, 18, 19

11 U.S.C. § 548 ............................................................................................... *passim*

11 U.S.C. § 550 ..................................................................................................................4

11 U.S.C. § 741 ................................................................................................................24

15 U.S.C. § 80(b)-6(4) .....................................................................................................20

740 ILCS 160/1 *et seq.* ....................................................................................................4

740 ILCS 160/2 ...............................................................................................................16

740 ILCS 160/5 ...............................................................................................................16

740 ILCS 160/6 ...............................................................................................................16

740 ILCS 160/8 ...............................................................................................................16

*Miscellaneous References*

H.R. Rep. No. 97-420 (1982)......................................................................................22, 23

5 Collier on Bankruptcy ¶ 550.01[1] (Lawrence P. King, Ed., 15th ed. 1999) ............................22

## PRELIMINARY STATEMENT

In this adversary proceeding, the Chapter 11 Trustee seeks to recover from Defendants Philip M. Bloom, Eric A. Bloom, Sentinel Investment Group, Inc., Sentinel Financial Services, Inc., Sentinel Management International, Ltd., Fountainhead Investments, Inc., EB 2005 Trust, Sybil Bloom Revocable Trust, Philip M. Bloom Revocable Trust, Philip M. Bloom Remainder Trust, Eric A. Bloom Living Trust and Philip M. Bloom Grantor Annuity Trust (collectively, the "Bloom Defendants"), and Charles K. Mosley (not a movant herein) (i) in excess of $350,000,000 of investment losses allegedly suffered by the customers of debtor Sentinel Management Group, Inc. ("Sentinel"), and (ii) in excess of $20,000,000 of allegedly fraudulent or preferential transfers, the funds for which are alleged to be proceeds of defendants' alleged "criminal scheme" to pilfer customers' funds. However, as set forth in more detail below, the Trustee's Complaint suffers from the fundamental -- and fatal -- flaw that a Chapter 11 trustee lacks standing to pursue claims which seek the recovery of property in which the debtor has no interest. In the present case, the Trustee therefore lacks standing under any of his asserted theories to either (a) seek to recover the investment losses allegedly suffered by Sentinel's customers, or (b) avoid transfers of the property of Sentinel's customers in which Sentinel did not have an interest.

Although spread over 264 paragraphs and 19 Counts, the Trustee's Complaint essentially reduces to two primary claims.[1]  In the first of those claims (Counts 9-12, 15 and 16), the Trustee

---

[1]  In Counts 17 and 18, the Trustee asserts stand-alone claims for equitable subordination under § 510(c) of the Bankruptcy Code and disallowance of claims under § 502(d) of the Code.  Although it is questionable whether these claims should be asserted in this manner or at this time, the dismissal of these Counts is not sought in this motion.

seeks the recovery of "an amount exceeding Three Hundred Fifty Million Dollars ($350,000,000.00)" (*e.g.,* Cmplt. ¶¶ 216, 226, 248), which is intended to reflect the total investment losses allegedly suffered by Sentinel's customers as a result of the Bloom Defendants' purported "criminal scheme." *Id.* ¶117. The legal theories upon which the Trustee seeks this recovery are breach of fiduciary duty (Counts 9-12), civil conspiracy (Count 15) and unjust enrichment (Count 16).

Anticipating the serious problems he faces with his lack of standing to bring any claim based on investment losses to customers, the Trustee portrays the allegations as relating to a "long-term, massive fraud against Sentinel and its customers." *Id.* ¶ 1 (emphasis added). Notwithstanding that characterization, however, the Trustee's actual allegations detailing the alleged "massive fraud" make clear that the direct victims of the alleged fraud are Sentinel's customers, not Sentinel itself. Indeed, the gravamen of the scheme alleged by the Trustee in his Complaint is the alleged misuse of customer assets for the purported benefit of the defendants:

- The scheme "permitted the Individual Defendants to fraudulently convey to themselves tens of millions of dollars generated by misusing customer funds." *Id.* ¶ 2 (emphasis added).

- The Individual Defendants "commingled and misused client funds for their own financial gain, employing a pattern of deception and lies" (*id.* ¶ 3 (emphasis added)), and falsely "represented to their customers . . . that customer funds were segregated" (*id.* ¶ 54 (emphasis added)).

- The Individual Defendants "lied about the nature of investments made on behalf of customers," (*id.* ¶ 4 (emphasis added)), "lied to customers on a daily basis by submitting false and misleading account statements" (*id.* (emphases added)), and the "representations [to customers] were false" regarding the nature of the customers' investments, including representations appearing on Sentinel's website. (*id.* ¶¶ 39-41) (emphasis added).

- The Individual Defendants "fraudulently concealed from customers the use of leveraging," (*id.* ¶ 4 (emphasis added)), and the "fact that leveraging was actually

- 2 -

being used was never disclosed <u>to clients</u> on their daily account statements." (*id.* ¶ 43) (emphasis added).

- The Individual Defendants "fraudulently used securities required to be <u>segregated for Sentinel customers</u> as collateral for their 'House' loans" (*id.* ¶ 4 (emphasis added)), and they did so "without the <u>customer's knowledge or consent</u>" (*id.* ¶ 50 (emphasis added)).

- The Individual Defendants "commingled and transferred funds and securities among supposedly segregated <u>customer portfolios</u>." *Id.* ¶ 4 (emphasis added).

- The Individual Defendants "fraudulently diverted income earned on <u>securities attributable to customers</u> to service the loans for the benefit of insiders," (*id.* ¶ 4 (emphasis added)), and they falsely represented to "<u>customers</u> on a daily basis that they were receiving their pro rata share of interest income." (*id.* ¶¶ 57-58 (emphasis added)).

- The "'House' loans had been improperly collateralized with supposedly segregated <u>customer securities</u>." *Id.* ¶ 6 (emphasis added).

- Defendant Mosley was able to "disproportionately direct profitable trades to defendants' accounts and unprofitable trades <u>to customers</u>." *Id.* ¶ 70 (emphasis added).

- The defendants achieved over $19 million in trading gains for their own accounts "through the scheme described herein," (*id.* ¶ 61), whereas "<u>customer portfolios</u> sustained millions of dollars in losses" (*id.* ¶ 63 (emphasis added)).

- The Individual Defendants "caused Sentinel to transfer more than $20 million to themselves, <u>substantially all of which</u> constituted fraudulently realized proceeds of <u>the defendants' criminal scheme.</u>" *Id.* ¶ 117 (emphasis added).

Hence, in the Trustee's own words, the so-called "massive fraud" allegedly was directed at customers of Sentinel. As a matter of settled law, each of the claims based on that alleged fraud belongs only to those customers. Indeed, two of Sentinel's customers already have filed class action lawsuits purporting to assert such claims and seeking to recover these same alleged losses. Accordingly, the Trustee does not stand in the shoes of Sentinel's customers and has no standing to pursue any of the $350,000,000 investment losses allegedly sustained by those customers as a result of the alleged misuse, diversion and commingling of their assets and the

alleged false statements made to them concerning the nature, leveraging, and collateralization of their investments.

The second of the Trustee's primary claims, which seeks the recovery of allegedly fraudulent "insider" transfers of interests in Sentinel property, also suffers from a fatal lack of standing. In Counts 1-8, the Trustee seeks the recovery of approximately $20 million of allegedly fraudulent transfers to the Bloom Defendants (as well as Defendant Mosley) of "purported interests in Sentinel's property" in the form of investment withdrawals, dividends, tax payments, administrative fees, salary, bonuses, and expense reimbursement. The legal theories upon which the Trustee seeks this recovery are §§ 544(b)(1), 547(b), 548(a)(1)(A), 548(a)(1)(B) and 550(a) of the Bankruptcy Code, as well as the Illinois Uniform Fraudulent Transfers Act, 740 ILCS 160/1 *et seq.* In addition, in Counts 13 and 14, the Trustee seeks to recover the same dividend payments under state law, and in Count 19, the Trustee seeks a permanent injunction against any further allegedly fraudulent transfers to insiders.[2]

Again anticipating his lack of standing to pursue claims that do not seek to recover Sentinel's property, the Trustee's avoidance Counts dutifully recite that they seek to avoid transfers "of interest in Sentinel's property" (*see* Cmplt. ¶¶ 144, 150, 157, 166, 175, 183, 192, 201). However, dispositive on this motion is the conceded fact that the source of funds for "substantially all" of these allegedly fraudulent transfers was, in the Trustee's own words, the "fraudulently realized proceeds of the defendants' criminal scheme" (*id.* ¶ 117), *i.e.*, their alleged misuse and misappropriation of their <u>customers'</u> investment funds, including a "portfolio of

---

[2]     The Trustee's Complaint also sought a preliminary injunction against any further allegedly fraudulent insider transfers, which was resolved by way of a consent order entered by the Court on October 26, 2007 (Dkt. 25).

securities held for the benefit of" a number the Bloom Defendants by Sentinel in its "House" portfolio (*id.* ¶ 33). Indeed, the Trustee concedes in this Complaint that the lion's share of the "fraudulently realized proceeds" ($14,851,339) constitutes transfers from "accounts within the 'House' portfolio," also characterized by the Trustee as "redemptions or withdrawals from accounts within the House portfolio." *Id.* ¶¶ 128-129. In particular, as the Complaint alleges, the defendants were able to "fraudulently convey to themselves tens of millions of dollars generated by misusing customer funds," a pointed reference to the withdrawals from the accounts within the House portfolio. *Id.* ¶ 2.

Similarly, the Complaint alleges that defendants "extracted fraudulent trading gains for their personal accounts" from the misuse of customer assets, and that they collateralized the "House loan" using customer securities. *Id.* ¶¶ 4, 6. Yet none of those proceeds is alleged to have been taken at the expense of Sentinel. There is no allegation that Sentinel was a participant or owner in any of the House accounts from which those transfers were made. To the contrary, the Complaint explains that each of the accounts in the House portfolio was titled to and owned by the Bloom Defendants or entities controlled by them other than Sentinel. *Id.* ¶¶ 16-22, 33.

The balance of the $20 million in claimed preferential or fraudulent transfers (approximately $5 million) constitutes what the Trustee characterizes as dividends, administrative fees, salary, bonuses and expense reimbursements paid to the defendants. While such transfers sometimes may constitute transfers of interests in the debtor's property,[3] the Trustee's allegations here assert that the proceeds which constituted the transfers came from the

---

[3] This could never be true for Count 14 of the Complaint, which bizarrely seeks repayment of dividends alleged to have been issued by non-debtor defendants, not the debtor. See Point III below.

- 5 -

"defendant's criminal scheme" -- which only can refer to the scheme to victimize Sentinel's customers. Therefore, those avoidance claims fail for the same reason as the avoidance claims pertaining to transfers out of the House accounts -- the transferred property did not constitute property of the debtor.

Finally, an independent, yet equally strong, basis to dismiss that portion of the preference claims asserted in Counts 2-8, relating to $14.8 million in withdrawals from the so-called "House" portfolio, is that they are "settlement payments" within the meaning of the safe harbor provisions of 11 U.S.C. § 546(e), and therefore are immune from the Trustee's avoidance powers under either the Bankruptcy Code or state law.

\* \* \* \* \*

Because the motion to dismiss is brought under Rule 12(b)(6), the Bloom Defendants are required to accept the Trustee's well-pled allegations as true for purposes of the motion. Lest there be any confusion, nothing in this motion should be interpreted as acquiescing in the Trustee's factual assertions. Quite to the contrary, the Trustee's one-sided and salacious story regarding Sentinel's collapse and the damages to its customers is just that -- only one side. Although the Trustee levels serious accusations against defendants as a group, the Trustee must present his proof as to each individual, and each individual will be entitled to defend against those charges. The Bloom Defendants, in particular, will be entitled to show that for the last 25 years, hundreds of sophisticated money managers invested billions of dollars of both their clients' and their own money with Sentinel with absolutely no problems until this past summer when, like an ever-growing number of sophisticated investors and investment firms, Sentinel fell victim to the worldwide liquidity crisis in the credit markets. The Bloom Defendants also will be entitled to show that Sentinel was subject to regular audits by several governmental agencies and

its own outside auditing firm, and at no time did any of those audits uncover any problems with the use or alleged misuse of customer assets. And, without doubt, the Bloom Defendants are entitled to demonstrate that when Sentinel was faced with its unprecedented liquidity crisis this past summer, defendant Eric Bloom first alerted Sentinel's regulators of Sentinel's decision to halt redemptions, and then authorized a voluntary bankruptcy filing with the almost certain result being that his entire net worth would be wiped out.

## STATEMENT OF FACTS

### A.    The Parties

Debtor, Sentinel, is an Illinois corporation which maintains its headquarters in Northbrook, Illinois. Cmplt. ¶¶ 12, 13. For more than 25 years prior to the filing of the Trustee's Complaint, Sentinel was, as the Trustee acknowledges, "a registered investment adviser that primarily managed investments of short-term cash for various clients," including hedge funds, financial institutions and commodity brokers. *See id.* ¶ 28.

Plaintiff Frederick J. Grede is the Chapter 11 trustee for Sentinel.

Defendant Philip M. Bloom, who founded Sentinel in 1979, was the Chairman of its Board of Directors. *See id.* ¶ 14. Philip Bloom is alleged to be the beneficiary of Defendants Philip M. Bloom Grantor Annuity Trust and Philip Bloom Revocable Trust. *Id.* ¶¶ 22, 26. Philip Bloom's wife, Sybil Bloom, is alleged to be the beneficiary of Defendant Sybil Bloom Revocable Trust. *Id.* ¶ 21.

Defendant Eric A. Bloom was the President, Chief Executive Officer and a director of Sentinel. *Id.* ¶ 15. Eric Bloom is alleged to be the beneficiary of defendant EB 2005 Trust, which wholly owns Defendant Fountainhead Investments, Inc. ("Fountainhead"), and Defendant Eric A. Bloom Living Trust. *Id.* ¶¶ 20, 23, 25.

Defendant Sentinel Investment Group, Inc. ("SIG") is alleged to be the parent company of Sentinel, and, in turn, is alleged to be owned by Defendants Philip M. Bloom Remainder Trust, the Eric A. Bloom Living Trust, Sentinel Financial Services, Inc. ("SFS"), and Fountainhead Investments, Inc. ("Fountainhead"). *Id.* ¶¶ 17, 18, 20. Defendant Sentinel Management International, Ltd. ("SMI") is alleged to be a wholly owned subsidiary of SIG. *Id.* ¶ 19.

Defendant Charles K. Mosley was Sentinel's head trader until he was terminated on or about August 15, 2007. *Id.* ¶ 16.

### B. The Sentinel Accounts At Issue

#### 1. The "SEG" accounts

Sentinel is a registered investment adviser that primarily manages short-term cash investments for its customers, which include commodities brokers, hedge funds, financial institutions, and individuals. *Id.* ¶ 28. To accomplish that, Sentinel established three segregated custodial accounts for its customers which, for the past ten years, have been maintained at the Bank of New York: an account referred to as SEG 1, which, as alleged in the Complaint, contains "customer funds and property of registered commodity brokers, or FCMs (futures commission merchants);" SEG 2, which contains "the funds and property of FCM customers;" and, SEG 3, which contains "assets of all other types of clients." *See id.* ¶¶ 30-32.

#### 2. The "House" account

In addition to the SEG accounts, Sentinel maintained a "House" portfolio, which, as the Complaint expressly recognizes, also did not hold any funds that were property of the estate, but rather, "was a portfolio of securities held for the benefit of defendants Philip Bloom Revocable Trust, Sybil Bloom Revocable Trust, Fountainhead, Charles Mosley, SIG, SFS, and SMI." *Id.*

¶ 33 (emphasis added).  For example, at the time of Sentinel's Chapter 11 petition, the balance in

SIG's investment account was nearly $1.5 million, and the balance in Fountainhead's investment

account was approximately $500,000.[4]

Sentinel's relationships with all of its customers, including the Defendants who invested

millions of their own dollars with Sentinel, were governed by Investment Advisory Agreements,

or, with respect to certain accounts opened during and after 2004, Investment Management

Agreements.  *See id.* ¶ 34.  Among other important provisions, at all times each of those

agreements provided that "All Assets shall be... held for the benefit of Client," and that

"Sentinel shall not own nor have any interest in funds or securities in the [Client's] Account or of

any other funds in which Client has a beneficial interest."[5]

### C. The Allegations Of The Complaint All Concern Defendants' Alleged Misuse Or Misappropriation Of The Property Of Sentinel's Customers, Not Sentinel Itself

Setting aside its efforts to demonize the Bloom Defendants, the wrongdoing alleged in

the Complaint falls into the following categories, all of which concern property of Sentinel's

customers, not Sentinel:

---

[4]     It is settled that on a motion to dismiss, the Court can consider documents which are referenced in the complaint. *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."). Here, transfers to from these two accounts are referenced in the Trustee's Complaint (*e.g.*, ¶¶ 62, 118, 130), and the August 2007 statements for these accounts are included as Exhibits 83 and 96 to the previously-filed Declaration of the Trustee's forensic accountant, David Moes.  For ease of reference, copies of these documents are being re-submitted as Exhibits 1 and 2 to this memorandum.

[5]     Sentinel's form agreements with its clients are referenced in the Trustee's Complaint. (*See, e.g.*, ¶ 34), and also were attached as exhibits (34, 35) to the previously-filed Moes Declaration.  For ease of reference, these agreements are also attached as Exhibits 3 and 4 hereto.

### 1. Alleged improper use of customer assets for leveraging

The Trustee alleges that "from at least 2003, defendants Philip Bloom, Eric Bloom, and Charles Mosley employed an unlawful leveraging scheme using funds obtained from customers or borrowed using customer securities." Cmplt. ¶ 44. Further, the Trustee alleges that Sentinel also improperly engaged in repurchase or "repo" transactions in which it would borrow money from the Bank of New York to buy securities, then would transfer those securities to a counterparty in return for cash, and would then use that cash to repay the Bank of New York loans. *Id.* ¶ 45. According to the Complaint, these transactions involved only customer funds, and did not involve any property in which Sentinel had an interest. *See id.* ¶¶ 43-49.

### 2. Alleged diversion of customer assets to collateralize loans

The Trustee alleges that, beginning in 2003, the Individual Defendants obtained a loan for the "House" account from the Bank of New York, using "as collateral for that loan securities that were supposedly segregated for the benefit of customers." *Id.* ¶¶ 50-52; *see also* ¶¶ 82, 92, 94. There is no allegation that any Bloom Defendant misused any securities in which Sentinel had an interest.

### 3. Alleged commingling of customer assets

The Trustee alleges that "[i]n spite of promises that the assets of customers in SEGs 1, 2 and 3 would be segregated from each other, and from the defendant's own funds at the custodial bank, defendants Philip Bloom, Eric Bloom and Charles Mosley commingled funds and securities among the three SEG portfolios, and between those portfolios and the defendant's portfolio." *Id.* ¶ 55. There is no allegation that any Bloom Defendant inappropriately used or commingled funds or securities in which Sentinel had an interest.

- 10 -

### 4. Alleged diversion and misallocation of interest income from customer accounts

The Trustee alleges that, as part of its investment management strategy, Sentinel used customer funds to purchase securities that generated daily interest income. *Id.* ¶ 56. The Trustee further alleges that a portion of the "customer interest income was being siphoned off by Philip Bloom, Eric Bloom and Charles Mosley to service Sentinel's loan with the Bank of New York." *Id.* ¶ 58. The Trustee further alleges that some of the earned interest was diverted to the "House" account for Defendants' benefit, and that earned interest was inappropriately commingled with the Defendants' own portfolio. *Id.* ¶¶ 58-60. The Trustee does not allege that any of the Bloom Defendants diverted or misused interest income that was property of the Debtor, Sentinel.

### 5. Alleged extraction of unlawful trading profits from customer accounts

The Trustee alleges that from January 2004 through July 2007, the Defendants' "House" portfolio realized trading gains while customer portfolios sustained millions of dollars in losses. *Id.* ¶¶ 61-63. There is no allegation of any impropriety by any Bloom Defendant with respect to any trading gains (or losses) belonging to Sentinel.

### 6. Alleged improper allocation of trades for customer accounts

The Trustee alleges that the individual Bloom Defendants engaged in a trading practice under which trades were allocated on the settlement date rather than the date when the trades were made in order to allow defendants to allocate profitable trades to their own accounts and unprofitable trades to customer accounts. *Id.* ¶¶ 65-71. There is no allegation that any Bloom Defendant engaged in any wrongful practice regarding accounts or funds in which Sentinel had an ownership interest.

7.     **Alleged false and misleading customer statements**

The Trustee alleges that the individual Bloom Defendants caused Sentinel to issue false and misleading account statements to its customers.  *Id.* ¶¶ 73-84.  There is no allegation of any false or misleading customer statements made to Sentinel.

**D.     Two Of Sentinel's Customers Already Have Filed Putative Class Actions In District Court Which Seek To Recover The Same Alleged Investment Losses Sought Here By The Trustee**

As just summarized, the Trustee spends a great deal of his Complaint reciting the Bloom Defendants' alleged misuse or misappropriation of property belonging to Sentinel's customers (but not Sentinel).  However, two of Sentinel's customers already have filed putative class actions in U.S. District Court for the Northern District of Illinois on behalf of Sentinel's customers against certain of the defendants herein, including Philip Bloom and Eric Bloom, among former Sentinel personnel who are not parties to this action.  *Shatkin v. Bloom, et al.*, No. 07 CV 5076, was filed on September 10, 2007, a month prior to the filing of the Trustee's Complaint, and *McKinlay v. Bloom, et al.*, No. 07 CV 5759, was filed on October 11, 2007, the same day as the Trustee's Complaint.[6]

These class actions, which contain substantively similar factual allegations to the Trustee's Complaint, seek redress on behalf of Sentinel's customers for precisely the same investment losses which the Trustee is seeking to recover in this adversary proceeding.

---

[6]     This Court can take judicial notice of these complaints without converting this motion into a motion for summary judgment.  *Henson v. CSC Credit Serv.,* 29 F.3d 280, 284 (7th Cir. 1994) ("[d]espite the express language of Fed. R. Civ. P. 12(b), '[t]he district court may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." )(citations omitted).  For the Court's convenience, copies of these complaints are attached hereon as Exhibits 5 and 6, respectively.

## THE STANDARD ON THIS MOTION TO DISMISS

While on a motion to dismiss the well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in the plaintiff's favor, to survive such a motion the complaint must state allegations concerning all of the material elements necessary for recovery under the relevant legal theory. *Papapetropoulous v. Milwaukee Transp. Serv., Inc.*, 795 F.2d 591, 594 (7th Cir. 1986). Accordingly, dismissal is appropriate if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

## ARGUMENT

### I. THE TRUSTEE LACKS STANDING TO PURSUE CLAIMS THAT SEEK TO RECOVER THE INVESTMENT LOSSES ALLEGEDLY SUFFERED BY SENTINEL'S CUSTOMERS (COUNTS 9-12, 15 AND 16)

The law is well settled that a Chapter 11 Trustee lacks standing to pursue claims that the debtor's creditors may have against third parties, regardless of whether the legal theory advanced by the Trustee is any of three theories advanced in the present case, *i.e.*, breach of fiduciary duty (Counts 9-12), civil conspiracy (Count 15) or unjust enrichment (Count 16). As explained by the Seventh Circuit in *Steinberg v. Buczynski*, 40 F.3d 890, 893 (7th Cir. 1994) (Posner, J.), in dismissing an adversary proceeding brought by a trustee:

> [T]he trustee is confined to enforcing entitlements of the corporation. He has no right to enforce entitlements of a creditor. He represents the unsecured creditors of the corporation; and in that sense when he is suing on behalf of the corporation he is really suing on behalf of the creditors of the corporation. But there is a difference between a creditor's interest in the claims of the corporation against a third party, which are enforced by the trustee, and the creditor's own direct--not derivative--claim against the third party, which only the creditor himself can enforce.

- 13 -

*Accord Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428 (1972)(trustee has

no authority to enforce claims other than those belonging to the debtor)*; Wayne Film Sys. Corp.*

*v. Film Recovery Sys. Corp.*, 64 B.R. 45, 50 (N.D. Ill. 1986) ("[A] trustee does not stand in the

shoes of the bankrupt's creditors for all purposes. Rather, if a creditor has a claim against a third

party . . . the trustee has no standing to pursue that creditor's claim against the third party, even if

the claim is common to many creditors."); *Asch v. Teller, Levit & Silvertrust, P.C.*, No. 00 C

3290, 2003 U.S. Dist. LEXIS 16747, at *24 (N.D. Ill. Sept. 23, 2003) ("The court cannot

conclude that the Illinois Supreme Court intended to create a claim for unjust enrichment where

a plaintiff claims *damages that rightfully belong to a third party*.") (emphasis added); *Kikson v.*

*Underwriters Labs.*, No. 02 C 8265, 2005 U.S. Dist. LEXIS 6269, at *11-13 (N.D. Ill. Mar. 31,

2005) (holding that former officer of dissolved company did not have standing to assert claims,

including claims for civil conspiracy to defraud, on behalf of company); *Williams v. California*

*1st Bank*, 859 F.2d 664, 666-67 (9th Cir. 1988) (dismissing securities law claims brought by

trustee on behalf of investors for lack of standing because the investing customers were the real

parties in interest).

The Seventh Circuit also has held that an investment advisor such as Sentinel lacks

standing to bring suit for losses suffered by its customers -- which is exactly what the Trustee

seeks to do here. In *Indemnified Capital Invs., SA. v. R.J. O'Brien & Assocs.*, 12 F.3d 1406 (7th

Cir. 1993), an investment advisor, Indemnified Capital Investments ("ICI"), received money

from investors, which it then invested in a commodity futures trading account with the defendant

investment broker. ICI later brought claims for breach of fiduciary duty against the defendant,

alleging that investors lost funds when the defendant failed to manage the invested funds

according to ICI's requests. *Id.* at 1407-08. The District Court for the Northern District of

- 14 -

Illinois dismissed the complaint for lack of standing, and the Seventh Circuit affirmed, holding

that ICI had not suffered any injury because it was the investors, rather than ICI, who lost

money. *Id.* at 1409 ("[T]he losses incurred by the ICI customer accounts accrued only to ICI's

customers and are too attenuated to create standing for ICI."). *Accord Scholes v. Schroeder*, 744

F. Supp. 1419, 1422 (N.D. Ill. 1990) ("Fraud on the investors that damages those investors is for

those investors to pursue -- not the receiver.")

     In the present case, the majority of the Trustee's factual allegations, as well as Counts 9-

12 (state law claims for breach of fiduciary duty and knowing participation in breach of fiduciary

duty), Count 15 (civil conspiracy) and Count 16 (unjust enrichment), seek the recovery of

damages in excess of $350 million for investment losses allegedly suffered by Sentinel's

customers and other non-debtor entities, such as the creditors of defendants SIG, SFS and SMI.

*See* Cmplt. ¶¶ 215-16, 221-26, 228, 247-48, 250.  Under the foregoing authorities, the claims that

the Trustee asserts on behalf of Sentinel's customers seeking to recover their alleged investment

losses are prototypical examples of claims that belong to Sentinel's customers.  For example, the

Trustee alleges breaches of fiduciary duty not just to Sentinel, but also to Sentinel's creditors

and, in Counts 11 and 12, to non-debtor defendants SIG, SFS and SMI.  See Cmplt. ¶¶ 225,

228.  Even as to the alleged breaches of fiduciary duty to Sentinel, the allegations of the

Complaint make clear that the alleged damages were sustained by Sentinel's customers, and are

not alleged to result in any way from any breach of a duty owed by any Bloom Defendant to

Sentinel.  Similarly, with respect to the Trustee's civil conspiracy claim, although the Trustee

again recites that the victim of the alleged conspiracy was "Sentinel and its creditors," the

allegations of the Complaint itself make clear that the $350,000,000 in alleged damages are

solely meant to encompass the alleged investment losses of Sentinel's customers.

- 15 -

For this very reason, two of the same Sentinel customers that the Trustee here purports to represent already have filed putative class action lawsuits which seek recovery of the same alleged investment losses that the Trustee here purports to seek. Putting aside for present purposes whether any of Sentinel's customers would prevail on a claim to recover their investment losses against the Bloom Defendants under any theory, the pendency of these class action lawsuits confirms that the Trustee lacks standing to assert claims against the Bloom Defendants which seek the recovery of investment losses suffered not by Sentinel, but by its customers. Accordingly, Counts 9-12, 15 and 16 of the Trustee's Complaint must be dismissed as a matter of law.

## II.    THE TRUSTEE HAS FAILED TO STATE A CLAIM FOR AVOIDANCE OF ANY ALLEGED "INSIDER" TRANSFERS (COUNTS 1-8, 19)

### A.    The Trustee Lacks Standing To Avoid Transfers Of Property In Which Sentinel Does Not Have An Interest

#### 1.    As a matter of settled law, the Trustee cannot seek recovery of assets in which Sentinel does not own an equitable interest

Sections 547 and 548 of the Bankruptcy Code, which form the basis for Counts 1, 3, 6 and 7 of the Trustee's Complaint, allow for avoidance of only transfers "of an interest of the debtor in property." 11 U.S.C. §§ 547(b), 548(a)(1). Similarly, the sections of the Illinois UFTA (740 ILCS 160/5, 6, 8) which form the basis of Counts 2, 4, 5 and 8 of the Trustee's Complaint similarly allow avoidance of "transfers," which are defined in 740 ILCS 160/2 as "disposing of or parting with an asset or an interest in an asset . . . ," with "asset" defined as "property of a debtor." 740 ILCS 160/2(b) & (l), 160/5 (a), 160/6 (a & b), 160/8(a)(1); *see Regan v. Ivanelli*, 246 Ill. App. 3d. 798, 804, 617 N.E.2d 808, 814 (2d Dist. 1993) (interpreting the statute and holding that "the only property which can be conveyed to defraud creditors is that in which the debtor has an interest").

It is axiomatic that a trustee cannot seek to collect funds -- whether under the Trustee's

avoidance powers under the Bankruptcy Code or under state law -- that are not property of the

estate. In *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 428 (1972), the U.S.

Supreme Court held that the Bankruptcy Act did not include any provision enabling the trustee

"to collect money not owed to the estate." *Id.* There, the trustee had brought suit against the

indenture trustee, Marine Midland, claiming that holders of the debtor's debentures were harmed

because Marine Midland failed to discover that the debtor had violated the indenture agreement.

*Id.* at 419-20. The Supreme Court affirmed the decisions below, holding that the trustee had no

standing to raise claims "on behalf of debenture holders." *Id.* at 420, 435. The Court also found

that the trustee's suit on behalf of debenture holders could be "inconsistent with any independent

actions that they might bring themselves." *Id.* at 431-32. The Court saw no reason to believe

that "by giving petitioner standing to sue on behalf of the debenture holders we would reduce

litigation." *Id.* at 434. When Congress rewrote the bankruptcy laws in 1978, it rejected a

provision which would have expressly overruled *Caplin,* and therefore *Caplin* remains the law

under the Bankruptcy Code. *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d

1339, 1348, n. 11 (7th Cir. 1987).

As recognized by the Seventh Circuit, where a debtor does not have an equitable interest

in property, that property is not property of the estate:

> Although a debtor's bankruptcy estate includes 'all legal or
> equitable interests of the debtor in property as of the
> commencement of the case,' 11 U.S.C. § 541(a)(1), the Code
> recognizes that the property of the bankruptcy estate does not
> include any interest in which the debtor holds only bare legal title.

*Marrs-Winn Co. v. Gilberson Elec. (In re Marrs-Winn Co.)*, 103 F.3d 584, 589 (7th Cir. 1996)

(emphasis added).

- 17 -

In *Jenkins v. Chase Home Mortg. Corp. (In re Maple Mortg.)*, 81 F.3d 592 (5th Cir. 1996), the court affirmed a bankruptcy court's summary dismissal of the trustee's claims under 11 U.S.C. §§ 547 and 548 because the debtor, a mortgage servicer, "had no equitable interest in the funds transferred" -- mortgage payments that federal law required to be kept in a segregated trust -- despite the debtor having "discretion over the account itself." *Id.* at 596-97. As noted by that Court, "[t]he primary consideration in determining if funds are property of the debtor's estate is whether the payment of those funds diminished the resources from which the debtor's creditors could have sought payment. Conversely, if funds cannot be used to pay the debtor's creditors, then they generally are not deemed an asset of the debtor's estate for preference purposes." *Id.* at 595 (quoting *In re Southmark*, 49 F.3d 1111, 1117 (5th Cir. 1995)).

It is not necessary for there to have been a formal trust created for property to be deemed to be held in trust. As the Seventh Circuit held in *Marr-Winns Co.*:

> It is a well-settled principle that debtors do not own an equitable interest in property that they hold in trust for another, and thus, those trust funds are not 'property of the estate.' Accordingly, several courts of appeals have held that when a debtor receives money as a trustee pursuant to a statutory, express, or implied trust, the debtor acquires only bare legal title to the trust proceeds and maintains no equitable interest in those proceeds. As such, those trust proceeds can only be distributed to trust beneficiaries, and not to the creditors of the bankruptcy estate.

103 F.3d at 589 (emphasis added; citations omitted). *See Hamilton Bancshares, Inc. v. Leroy*, 131 Ill. App. 3d 907, 910, 476 N.E.2d 788, 790 (4th Dist. 1985) ("When a person accepts possession of personal property with the express or implied understanding to hold it for certain specific purposes or specified persons, a valid and enforceable trust exists.").

Accordingly, a bankruptcy trustee cannot avoid an allegedly fraudulent transfer under §§ 547 or 548 when the transferred property is deemed to be held in trust, or the debtor otherwise

has no equitable interest in the property. *See Begier v. IRS*, 496 U.S. 53, 59 (1990) ("Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not 'property of the estate.' Nor is such an equitable interest 'property of the debtor' for purposes of § 547(b)."); *Maple Mortg.*, 81 F.2d at 597; *Poss v. Morris (In re Morris)*, 260 F.3d 654, 670 (6th Cir. 2001) (quoting *Begier*).

Finally, the analysis of the avoidance claims asserted under the Illinois UFTA, set forth in Counts 2, 4, 5 and 8 of the Complaint, is identical to that of the claims asserted under §§ 547 and 548 of the Bankruptcy Code. The Illinois UFTA is *in pari materia* to § 548, and therefore, if the trustee has no standing to bring these avoidance claims under federal law, he also has no standing under the Illinois statute. *See, e.g.*, *Solow v. Reinhardt (In re First Commercial Mgmt. Group, Inc.)*, 279 B.R. 230, 240 (Bankr. N.D. Ill. 2002) (except for different statutes of limitations, the Illinois UFTA and § 548(a)(1)(A) & (B) of the Bankruptcy Code "are functional equivalents . . . ."); *Terry v. June*, 432 F. Supp. 2d 635, 639 (W.D. Va. 2006) (holding that § 548 and UFTA are "subject to the same analysis").

### 2. The Trustee concedes that Sentinel does not own an equitable interest in any of its "SEG" customer funds

With regard to the avoidance claims asserted in Counts 1-8 of the Trustee's Complaint, the threshold question is whether funds and securities belonging to Sentinel's customers and held in the segregated accounts (*i.e.*, SEG 1, SEG 2, SEG 3, "House") are "property of the debtor." The indisputable answer to that question here is <u>no</u>. The equitable interest in the funds that allegedly were fraudulently or preferentially transferred remained at all times with Sentinel's customers.

- 19 -

According to the customer agreements referenced in the Trustee's Complaint, Sentinel structured its customer accounts to ensure that customer funds and securities held in the segregated accounts were owned directly by the customers, not Sentinel. As those agreements stated with respect to each of Sentinel's customers, "[a]ll Assets shall be . . . held for the benefit of Client" and "Sentinel shall not own nor have any interest in funds or securities in the [Client's] Account or of any other funds in which Client has a beneficial interest." *See* Exs. 3 & 4 hereto, ¶¶ 5 (a) & (b). Moreover, as pled in the Complaint (¶ 53), because Sentinel was a registered futures commission merchant, it was subject to CFTC Rule 1.20, 17 C.F.R. §1.20, and § 4(d)(a)(2) of the Commodity Exchange Act, 7 U.S.C. § 6(d)(2), which required that customer funds be segregated for the benefit of customers. As a registered investment advisor, Sentinel was also subject to SEC Rule 206(4)-2, 17 C.F.R. § 275.206 (4)-(2), promulgated under the Investment Advisors Act of 1940 (the "Advisors Act"), 15 U.S.C. § 80(b)-6(4), which prohibited Sentinel from having custody of any customer funds or securities unless they were held in segregated accounts. *See* Cmplt. ¶ 53. By operation of law, these regulations foreclose any equitable interest of Sentinel in these customer funds, even if, as alleged, Sentinel had control over these funds while they were at Sentinel. *See Maple Mortg.*, 81 F.3d at 595.

As the Trustee alleges in the first paragraph of the "Transfers to Insiders" section of the Complaint, "the Individual Defendants caused Sentinel to transfer more than $20 million to themselves, substantially all of which constituted fraudulently realized proceeds of the defendants' criminal scheme." Cmplt. ¶ 117. While the Trustee makes no specific allegation regarding the source of the "Transfers to Insiders" or the misappropriation of funds, there is no allegation in the Complaint regarding the source of those payments other than the four Sentinel accounts, *i.e.*, SEG 1, SEG 2, SEG 3, and the "House" Account. Moreover, as the Complaint

alleges that the defendants were able to "fraudulently convey to themselves tens of millions of dollars generated by misusing customer funds." *Id.* ¶ 2 (emphasis added).

### 3. The Trustee also concedes that Sentinel does not own an equitable interest in any funds invested in its "House" portfolio

The foregoing analysis applies on all fours to all of the alleged "insider transfers" that were made from Sentinel's "House" portfolio. As alleged in the Complaint, each of these transfers, which the Trustee alleges totaled approximately $14.8 million, was made "from accounts within the 'House' portfolio." Cmplt. ¶ 128. For instance, the Trustee seeks to avoid a transfer made on July 18, 2007 in the amount of $5,648,492.43 from Sentinel's "House" portfolio to the Philip M. Bloom Revocable Trust, as well as a transfer in the amount of $5,652,432.83 from Sentinel's "House" portfolio to the Sybil Bloom Revocable Trust. These funds were not held in Sentinel's name, but as the Trustee readily admits, were held in the name of the trusts. *See id.* ¶¶ 95, 128. However, there is no allegation that Sentinel was a participant or owner in any of the House accounts from which those transfers were made. More specifically, as is true for each of Sentinel's customer accounts, each of these trusts was solely responsible for losses incurred in the accounts. Thus, as the Trustee's Complaint explains, each of the accounts in the House portfolio was titled to and owned by the Bloom Defendants or entities controlled by them other than Sentinel. *Id.* ¶¶ 16-22, 33

Simply put, there are no allegations whatsoever which even would suggest that these "House" funds for which the Trustee is seeking avoidance belonged to anyone other than the entities in whose names the accounts were held, which were not Sentinel. Although the Trustee alleges that the trading gains realized in the House account resulted from the defendants' misuse of customer assets, there is no allegation that the gains resulted in any way from the misuse of

Sentinel's property. Because these funds were not <u>Sentinel's</u> property, the Trustee lacks standing to avoid these transfers.

*    *    *    *    *

In sum, the transfers the Trustee seeks to avoid through Counts 1-8 of his Complaint do not involve property of Sentinel itself, but rather that of customers. According to the Complaint, "substantially all" of the proceeds for those transfers allegedly were generated by defendants' misuse of customer funds and securities to foster trading gains in the House portfolio. *Id.* ¶ 2, 4 6, 117. Yet, whether the alleged transfer was of proceeds from the "House" account or from one of the "SEG" accounts, none of those proceeds is alleged to have been taken at the expense of Sentinel. Therefore, the Trustee does not have standing to assert the avoidance claims set forth in those Counts.[7]

**B.      Under Section 546(e) Of The Code, The Trustee Cannot Avoid "Settlement Payments" Made By A "Commodity Broker"**

The Bankruptcy Code contains various safe-harbor provisions for the treatment of financial contracts to assure that the financial markets are insulated from the displacement and ripple effects caused by major bankruptcies. H.R. Rep. No. 97-420, at 1 (1982). Because the reversal of settled securities transactions severely would undermine confidence in the chain of guaranties upon which the markets depend and possibly threaten a collapse of the industry, one of the Code's significant market protections curtails a trustee's powers to avoid "settlement

---

[7]      Moreover, because each of Counts 1-8 fail to state a claim to avoid a transfer under the Code, there can be no recovery on account of the underlying transfers pursuant to § 550. 5 Collier on Bankruptcy ¶ 550.01[1] at 550-3 (Lawrence P. King ed., 15th ed. 1999) (recovery pursuant to § 550 is possible only after avoidance of the transfer).

payments" in the securities industry. *Id.* Section 546(e) of the Code sets forth this critical

exception to the trustee's avoidance powers providing that:

> Notwithstanding sections 544 . . . 547, 548(a)(1)(B), and 548(b) of
> this title, the <u>trustee may not avoid a transfer that is a . . .
> settlement payment,</u> as defined in Section 101 or 741 of this title,
> <u>made by or to a commodity broker,</u> forward contract merchant,
> stockbroker, financial institution, financial participant or securities
> clearing agency, that is made before the commencement of this
> case, except under 548(a)(1)(A) of this title.

11 U.S.C. § 546(e) (emphasis supplied).

Hence, the law is clear that an avoidance action will be dismissed where the transfers are

unavoidable under the safe harbor provisions set forth in Section 546(e). 11 U.S.C. § 546(e).

*See, e.g., Official Comm. of Unsecured Creditors v. Fleet Retail Fin. Group (In re Hechinger*

*Inv. Co.)*, 274 B.R. 71, 86-88, 98 (Bankr. D. Del. 2002); *Loranger Mfg. Corp. v. PNC Bank (In*

*re Loranger Mfg. Corp.)*, 324 B.R. 575, 583-86 (Bankr. W.D. Pa. 2005).

To determine whether the alleged "Insider Transfers" at issue in Counts 2-8[8] are

protected "settlement payments" that are immune from the Trustee's avoidance powers under

---

[8] Section 548(a)(1)(A), providing for avoidance of transfers upon a showing of the
Debtor's actual intent to hinder, delay or defraud a creditor, is preserved for the Trustee
under §§ 546(e). Accordingly, this argument does not apply to Count 1, which relies on
§ 548(a)(1)(A).

While the title of Count 3 of the Complaint references § 548(a)(1)(A) of the Code, which
is preserved for the Trustee under § 546(e), the text of the Count references
§ 548(a)(1)(B), and the allegations follow the requirements of that section of the Code,
not that of § 548(a)(1)(A).

Count 2, which seeks to set aside various transfers based on the Bloom Defendants'
alleged actual intent to defraud Sentinel's creditors under the Illinois UFTA, is also
barred by § 546(e). *See Official Comm. of Unsecured Creditors v. Clark (In re Nat'l
Forge Co.)*, 344 B.R. 340, 369-71 (Bankr. W.D. Pa. 2006) (rejecting the contention that
because intentional fraudulent transfers arising under § 548(a)(1)(A) are preserved for the

- 23 -

either the Bankruptcy Code or the Illinois Uniform Fraudulent Transfer Act, the first inquiry under Section 546(e) is whether the "Insider Transfers" were "settlement payments" under sections 101 or 741 of the Code. Section 741(8) defines "settlement payment" as a preliminary settlement payment, a partial settlement payment, an interim settlement payment, a settlement payment on account, a final settlement payment, or any other similar payment commonly used in the securities trade. 11 U.S.C. § 741(8). The term "settlement payment" is extremely broad and must be accorded its plain meaning and interpreted as it is plainly understood within the securities industry. *Kaiser Steel Corp. v. Charles Schwab & Co.*, 913 F.2d 846, 848 (10th Cir. 1990) (hereafter "Kaiser I"). *See Jonas v. Resolution Trust Corp. (In re Comark)*, 971 F.2d 322, 325 (9th Cir. 1992); *Bevill, Bresler & Shulman Asset Mgmt. Corp. v. Spencer Savings & Loan Ass'n (In re Bevill, Bresler & Shulman Asset Mgmt. Corp.)*, 878 F.2d 742, 751-52 (3d Cir. 1989) (noting that two important legislative policies "are on a collision course here," *to wit,* the power of a trustee to avoid certain transfers and the preservation of the securities markets). The aim of the definition is to encompass all settlement payments commonly used in the securities trade. *Kaiser Steel Corp. v. Pearl Brewing Co. (In re Kaiser Steel Corp.)*, 952 F.2d 1230, 1237 (10th Cir. 1991) (hereafter "Kaiser II"). *See Lowenschuss v. Resorts Int'l, Inc. (In re Resorts Int'l, Inc.)*, 181 F.3d 505, 515-16 (3d Cir. 1999).

A settlement payment is generally the transfer of cash or securities made to complete a securities transaction. *Kaiser I*, 913 F.2d at 849. A settlement payment does not require the involvement of a clearing house. *See Resorts Int'l*, 181 F.3d at 515; *Hechinger Inv. Co.*, 274

---

trustee, that claims asserted as intentional fraudulent conveyances under the Illinois UFTA are also preserved).

B.R. at 87. There are two opportunities for settlement in a routine purchase and sale. The first, the "street-side settlement," takes place between the broker and the clearing agency. *Kaiser II*, 952 F.2d at 1237-38. The second, the "customer-side settlement," occurs between the broker and the customer. *Id.* at 1238. Thus, it is logical that the term "settlement payment" encompasses payments made to settle a customer's account with its broker. *Id.*; *QSI Holdings, Inc. v. Alford (In re Quality Stores, Inc.)*, 355 B.R. 629, 634-35 (Bankr. W.D. Mich. 2006) (payment to shareholders were settlement payments protected under § 546(e)); *Enron Corp. v. J.P. Morgan Sec., Inc. (In re Enron Corp.)*, 325 B.R. 671, 684 (Bankr. S.D.N.Y. 2005) (relying on *Kaiser II*, the court recognized the two opportunities for settlement including the customer-side settlement).

Based on the allegations in the Trustee's Complaint, the alleged $14.8 million in Insider Transfers at issue in Counts 2-8 were "settlement payments" on the customer-side that are entitled to the safe harbor shelter of Section 546(e). Each of these transfers allegedly was made from "accounts within the 'House' portfolio." Cmplt. ¶ 128. The "House" portfolio "was a portfolio of securities." *Id.* ¶ 33. The Bloom Defendants allegedly received cash "as supposed partial or complete redemptions or withdrawals" from the "House" accounts. *Id.* ¶ 128. Accordingly, the term "settlement payment" encompasses Sentinel's settlement of the securities transactions in the "House" accounts, including without limitation, the Bloom Defendants' alleged redemptions and withdrawals from the "House" portfolio.

The final inquiry under Section 546(e) is whether the settlement payments were "made by or to," *inter alia,* a commodity broker. 11 U.S.C. § 546(e). The Code defines the term "commodity broker" as, *inter alia*, a "futures commission merchant." 11 U.S.C. § 101(6). The Complaint describes Sentinel as a "futures commission merchant ('FCM')." Cmplt. ¶ 13. On

the face of the Complaint, therefore, the Trustee concedes that the challenged transfers were "made by" a "commodity broker."

For these reasons, the $14.8 million in transfers for which avoidance is sought in Counts 2-8 all constitute "settlement payments" made by a "commodity broker." Thus, the Trustee cannot seek to avoid any of these transfers.

## III. THE TRUSTEE LACKS STANDING TO PURSUE STATE LAW DIVIDEND CLAIMS (COUNTS 13 AND 14)

Counts 13 and 14 of the Complaint assert claims under Illinois law for distributions of allegedly unlawful dividends. There can be no question that the Trustee does not have standing to assert Count 14, which seeks to have Defendants Philip Bloom and Eric Bloom repay the "SIG and SFS Dividends" -- dividends alleged to have been issued to them by non-debtor defendants SIG and SFS. *See* Cmplt. ¶ 244. The Complaint includes no explanation, nor is there any, as to how a state law claim relating to allegedly unlawful dividends issued by non-debtors could be property of the estate. Thus, for the reasons set forth above, Count 14 must be dismissed.

Count 13 seeks repayment, pursuant to state law, of dividends allegedly issued by the Debtor, namely what the Trustee terms "Insider Dividends" (defined at Cmplt. ¶ 122), and one or more of the other "Insider Transfers" (defined at Cmplt. ¶ 136). These transfers are alleged to have "constituted fraudulently realized proceeds of the defendants' criminal scheme" (Cmplt, ¶ 117), which allegedly was to divert customer funds for Defendants' own profit. Because the Complaint alleges it was customer funds that were used to pay the dividends, the Trustee again has no standing to pursue Count 13.

## CONCLUSION

For the foregoing reasons, the Bloom Defendants respectfully request that Counts 1-16 and 19 of the Trustee's Complaint be dismissed against them with prejudice.

Respectfully submitted,

s/Blake T. Hannafan
Michael T. Hannafan
Blake T. Hannafan
HANNAFAN & HANNAFAN, LTD.
One East Wacker Drive
Suite 2800
Chicago, Illinois 60601
Tel:  312-527-0055
Fax: 312-527-0220

- and -

David A. Kotler
DECHERT LLP
Princeton Pike Corporate Center
P.O. Box 5218
Princeton, NJ 08543-5218
Tel: 609-620-3200
Fax: 609-620-3259

**Attorneys for Eric A. Bloom, Sentinel Investment Group, Inc., Sentinel Financial Services, Inc., Sentinel Management International, Inc., Fountainhead Investments, Inc., EB 2005 Trust, and the Eric A. Bloom Living Trust**

s/ Corey B. Rubenstein
Mark L. Rotert
Corey B. Rubenstein
STETLER & DUFFY, LTD.
11 S. LaSalle Street, Suite 1200
Chicago, IL 60603
Tel: 312-338-0209
Fax: 312-338-0070

**Attorneys for Philip M. Bloom, the Philip M.
Bloom Revocable Trust, the Sybil Bloom
Revocable Trust, the Philip M. Bloom
Remainder Trust, and the Philip M. Bloom
Grantor Annuity Trust**

Dated: November 30, 2007

## CERTIFICATE OF SERVICE

### SERVICE LIST
### Adv. Case No. 07-00981

The undersigned, an attorney, hereby certifies that on November 30, 2007 he caused a

copy of the foregoing to be served electronically and to be sent by overnight courier upon the

following ECF Filing Users:

| | |
|---|---|
| William T. Neary<br>Roman Sukley<br>Gretchen Silver<br>United States Trustee<br>227 West Monroe Street<br>Suite 3350<br>Chicago, Illinois 60606<br>Telephone: (312) 886-5785<br>Facsimile: (312) 886-5694 | David A. Kotler<br>Dechert LLP<br>Princeton Pike Corporate Center<br>P.O. Box 5218<br>Princeton, NJ 08543-5218<br>Telephone: (609) 620-3200<br>Facsimile: (609) 620-3259 |
| Abraham Brustein<br>Paul Greco<br>Di Monte & Lizak LLC<br>216 West Higgins Road<br>Park Ridge, Illinois 60068<br>Telephone: (847) 698-9600<br>Facsimile: (847) 698-9623 | Mark L. Rotert<br>Corey B. Rubenstein<br>Stetler & Duffy, Ltd.<br>11 South LaSalle<br>Suite 1200<br>Chicago, Illinois 60603<br>Telephone: (312) 338-0200<br>Facsimile: (312) 338-0070 |
| J. Kevin McCall<br>Catherine L. Steege<br>Chris C. Gair<br>Vincent E. Lazar<br>Jenner & Block, LLP<br>330 North Wabash Avenue<br>Chicago, Illinois 60611-7603<br>Telephone: (312) 222-9350<br>Facsimile: (312) 527-2727 | Michael I. Goldberg<br>Joanne Gelfand<br>AKERMAN SENTERFITT<br>350 East Las Olas Boulevard, Ste. 1600<br>Fort Lauderdale, Florida 33301<br>Tel: 954-463-2700<br>Fax: 954-463-2224 |

s/Eric J. Malnar
Eric J. Malnar

13030392.3