**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **FREDERICK J. GREDE**, as Chapter 11 Trustee for Sentinel Management Group, Inc., <br><br> Plaintiff, <br><br> v. <br><br> **THE BANK OF NEW YORK** and **THE BANK OF NEW YORK MELLON CORP.,** <br><br> Defendants. | )<br>)<br>)  Case No. 08 C 2582<br>)<br>)<br>)<br>)  Honorable James B. Zagel<br>)<br>)<br>)<br>) |

**TRUSTEE'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES, OR
ALTERNATIVELY, FOR LEAVE TO SERVE ADDITIONAL INTERROGATORIES**

The Trustee for the estate of Sentinel Management Group, Inc. respectfully requests the Court to compel defendants The Bank of New York and the Bank of New York Mellon Corp. ("BONY") to provide full and complete substantive responses to the Trustee's First Set of Interrogatories.  Alternatively, the Trustee requests leave to serve more than twenty-five interrogatories.  In support of this Motion, the Trustee states the following.

**BACKGROUND**

1.     On April 29, 2008, the Trustee served BONY with his First Set of Interrogatories. *See* Exhibit A.  These consisted of four questions seeking the <u>names of witnesses</u> knowledgeable on the relevant issues so that the Trustee can conduct depositions efficiently rather than wasting time and the creditors' money playing hide-and-seek with BONY.  To answer these interrogatories, BONY only need provide names of persons with defined responsibilities or those who are most knowledgeable regarding fundamental aspects of BONY's relationship and transactions with Sentinel.  Ex. A at pp. 5-11.

2.     On June 2, 2008, BONY served its "Responses and Objections to the Trustee's First Set of Interrogatories" (the "Discovery Responses").  *See* Exhibit B.  In its Discovery Responses, BONY responded to Interrogatory Nos. 1-3, and partially responded to Interrogatory No. 4.  BONY refused to fully answer Interrogatory No. 4, asserting a blanket objection claiming that the portion of Interrogatory No. 4 for which it refused to provide substantive responses "exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1)" because "[s]ubparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory."  Ex. B at pp.18-38.

3.     Consistent with Rule 26(b)(1), which expressly defines the scope of permissible discovery to include "the identity and location of persons who know of any discoverable matter," Interrogatory No. 4 requests that BONY "identify the BONY employee(s), officer(s), agent(s), or other personnel possessing the most knowledge about" core matters pertaining to BONY's relationship and transactions with the Debtor that give rise to the Trustee's claims.  Ex. A at pp. 8-11.  The so-called subparts are not discrete questions, but simply the objects of the question propounded.

4.     Pursuant to LR 37.2, counsel for the Trustee and BONY conferred by telephone on June 18 and July 1 (and thereafter by email) in a good faith attempt to resolve this issue, but were unable to reach an accord.  BONY refuses to provide substantive responses to the remainder of Interrogatory No. 4 unless the Trustee waives its right to ever pose another interrogatory and agrees that BONY should get more than 50 interrogatories as compensation. The Trustee brings this motion to obtain necessary information regarding the identity of BONY personnel with knowledge of discoverable matters.

## ARGUMENT

**I.    THE COURT SHOULD ORDER BONY TO FULLY ANSWER THE TRUSTEE'S INTERROGATORIES PURSUANT TO THE FEDERAL RULES OF CIVIL PROCEDURE.**

The Court should grant the Trustee's motion to compel BONY to fully answer the Trustee's First Set of Interrogatories because only four interrogatories have been posed. The interrogatories, tendered in good faith, seek relevant information within the permissible scope of discovery that will promote efficient discovery.

**A.    The Trustee's First Set of Interrogatories Complies With the Limit Imposed By Rule 33(a).**

The Trustee's First Set of Interrogatories does not exceed the limit imposed by Rule 33(a). Under Rule 33(a), a party may serve "no more than 25 written interrogatories, including all *discrete* subparts." (Emphasis added.) Contrary to BONY's argument, though, the supposed "subparts" of the question are not discrete at all; they are an integral part of the main question.

BONY supports its objection with three cases—*Swackhammer v. Sprint Corp.,* 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.,* 200 F.R.D. 246, 247-48 (D.V.I. 2001); and *Kendall v. GES Exposition Servs, Inc.,* 174 F.R.D. 684, 685 (D. Nev. 1997)—but those cases cut the other way. According to BONY, they stand for the proposition that "Interrogatory subjects are to be counted as one interrogatory…if they are logically or factually subsumed within and necessarily related to the primary question." Ex. B. at pp.18-38. It hardly matters whether this standard, which has not been adopted in the Seventh Circuit,[1] is correct since even under this line of authority, the subparts of Interrogatory No. 4 plainly meet

---

[1] One magistrate judge in this District has used this approach to guide its analysis. *See Bell v. Woodward Governor Co.,* 2005 WL 3829134, at *1 (N.D. Ill. June 30, 2005).

that standard.  It asks, for example, that BONY "identify the BONY employee(s), officer(s), agent(s), or other personnel possessing the most knowledge about…"

> o.    "BONY's decision to accept or reject particular securities as collateral for any loan provided to Sentinel on each day between May 1 and August 31, 2007…"
>
> p.    "BONY collateral and margin requirements for any loan provided to Sentinel on each day between May 1 and August 31, 2007…"  *See* Ex. A at pp. 9.

The requests within Interrogatory No. 4 are all "logically or factually subsumed within and necessary related to" the main question.  Indeed, the main question is fragmentary and makes no sense apart from the identification of the relevant issues which follow.  These are not "discrete subparts" but part of a single question.  The Trustee could have used commas or semi-colons and run the entire question together but used separate subparts for the sake of clarity.

**B.    To the Extent the Trustee's Interrogatories Contain Discrete Subparts Exceeding Twenty-Five, Requiring BONY to Answer The Interrogatories Would Promote Efficient Discovery.**

Even if Interrogatory No. 4 could be characterized as containing discrete subparts, BONY should be required to provide complete substantive responses to promote efficient discovery. The purpose of pre-trial discovery mechanisms established by the Federal Rules of Civil Procedure is "for the parties to obtain the fullest possible knowledge of the issues and facts before trial."  *Clark Equip. Co. v. Lift Parts Mfg. Co.,* 1985 WL 2917, at *6 (N.D. Ill. Oct. 1, 1985) (citing *Hickman v. Taylor,* 329 U.S. 495, 500 (1947)).  The 1993 Advisory Committee Note to Rule 33 states that "the aim [of the limit] is not to prevent needed discovery, but to provide judicial scrutiny before parties make potentially excessive use of this discovery device."

Here, the interrogatory in issue is <u>not</u> overly burdensome or oppressive; rather it seeks basic discovery—the identity of BONY personnel with the most knowledge of a particular aspect of BONY's relationship and transactions with the Debtor—in the least burdensome, most cost-

effective method.  The Trustee's First Set of Interrogatories thus comports with the aim of the Federal Rules of Civil Procedure, and the Court should require BONY to fully answer the interrogatories served to date "in the interest of efficiency of discovery."

## II.    ALTERNATIVELY, THE COURT SHOULD GRANT THE TRUSTEE LEAVE TO SERVE IN EXCESS OF TWENTY-FIVE INTERROGATORIES.

Alternatively, the Court should grant the Trustee leave to serve more than twenty-five interrogatories, including all interrogatories set forth in the Trustee's First Set of Interrogatories. Courts "have repeatedly allowed discovery of the names and locations of persons with knowledge of the facts," and "[i]nterrogatories are the most frequent means of obtaining this information."  8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, <u>Federal Practice and Procedure</u> § 2013 (2d ed. 1994); *see also United States v. Chatham City Corp.,* 72 F.R.D. 640, 644 (S.D. Ga. 1976) (party was entitled as a matter of right to use interrogatory to ascertain names and addresses of persons having knowledge of subject matter).  BONY has effectively conceded that Interrogatory No. 4 seeks proper discovery because BONY has provided substantive information in response to Interrogatory Nos. 1-3, plus part of No. 4.  In addition, the number of interrogatories that the Trustee has served plainly is reasonable in light of the scope of this litigation.

Nor can Interrogatory No. 4 be considered unduly burdensome as each subpart is aimed at discovering which BONY employee has knowledge of particular aspects of BONY's relationship and transactions with the Debtor.  Such interrogatories

> can have the salutary effect of streamlining discovery, by providing the requesting party with information that will allow that party to decide which people with knowledge are necessary to depose.  The use of interrogatories to limit or narrow the use of more costly deposition discovery is in line with the goal of 'secur[ing] the just, speedy, and inexpensive determination' of lawsuits.

*E.E.O.C. v. Jewel Food Stores, Inc.,* 231 F.R.D. 343, 350 (N.D. Ill. 2005).

WHEREFORE, the Trustee respectfully requests that the Court:

(1) grant his motion to compel and require BONY to fully answer the Trustee's First Set of Interrogatories, served on April 29, 2008; or alternatively, grant his motion for leave to serve more than twenty-five interrogatories, including all the interrogatories in the Trustee's First Set of Interrogatories; and

(2) order BONY to provide full and complete substantive responses to the Trustee's First Set of Interrogatories within 14 days.


Dated: July 10, 2008                         Respectfully submitted,

                                             FREDERICK J. GREDE, not individually
                                             but as Chapter 11 Trustee of Sentinel
                                             Management Group, Inc.


                                             By:  s/ Chris C. Gair
                                                  One of his attorneys

Chris C. Gair (ARDC # 6190781)
Vincent E. Lazar (ARDC # 6204916)
Jeffrey S. Eberhard (ARDC # 6276471)
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL  60611
Phone: (312) 222-9350
Facsimile: (312) 527-0484

## <u>CERTIFICATE OF SERVICE</u>

I, John F. Kinney, an attorney, certify that on July 10, 2008, I caused the foregoing

Motion to Compel Answers to Interrogatories, or Alternatively, for Leave to Serve Additional

Interrogatories to be served via ECF to:

Sean T. Scott
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
stscott@mayerbrown.com

and via electronic transmission to:

Hector Gonzalez
Matthew D. Ingber
Paula Garrett Lin
1675 Broadway
New York, NY 10019
(212) 506-2500
hgonzalez@mayerbrown.com
mingber@mayerbrown.com
plin@mayerbrown.com

s/John F. Kinney

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| **SENTINEL MANAGEMENT GROUP, INC.,** | ) | |
| | ) | **CASE NO. 07 B 14987** |
| Debtor. | ) | |
| | ) | Hon. John H. Squires |
| | ) | |
| **FREDERICK J. GREDE,** as Chapter 11 | ) | |
| Trustee for Sentinel Management Group, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | **ADV. NO. 08-00127** |
| | ) | |
| **THE BANK OF NEW YORK** and | ) | |
| **THE BANK OF NEW YORK MELLON** | ) | |
| **CORP.,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

### <u>TRUSTEE'S FIRST SET OF INTERROGATORIES</u>

Frederick J. Grede, not individually but as Chapter 11 Trustee of Sentinel Management

Group, Inc. ("Sentinel"), pursuant to Rule 33 of the Federal Rules of Civil Procedure and Rule

7033 of the Federal Rules of Bankruptcy Procedure, requests that The Bank of New York and

The Bank of New York Mellon Corp. ("BONY") answer in writing and under oath the following

interrogatories within 30 days of service.

### <u>DEFINITIONS</u>

The following terms shall have the identified meanings for purposes of these

Interrogatories.

1646147

1.      "You," "your" and "BONY" includes defendants The Bank of New York and The Bank of New York Mellon Corp. and all of their employees, officers, agents, attorneys, representatives, subsidiaries, parents, affiliates, and others within their control.

2.      "Sentinel" means Sentinel Management Group, Inc. and its parents, subsidiaries, affiliates, predecessors, and successors, including, but not limited to, Sentinel Investment Group, Inc., Sentinel Financial Services, Inc., Sentinel Management International, Ltd., Fountainhead Investments, Inc., and Sentinel Asset Management, as well as their current or former officers, directors, employees, representatives, attorneys, agents, and any person acting on behalf of the foregoing, including, but not limited to, Philip M. Bloom, Eric A. Bloom, Theresa C. Arana, J. Matthew Keel, and Charles K. Mosley.

3.      "Defendant" means any person or entity named as a defendant in this adversary proceeding, *Frederick J. Grede, as Chapter 11 Trustee for Sentinel Management Group, Inc., v. The Bank of New York and The Bank of New York Mellon Corp.*, Adv. No. 08-127.

4.      The following terms are used herein as they are defined and used in the complaint dated March 3, 2008 in this adversary proceeding: (a) SEG 1 segregated government securities account; (b) SEG 3 segregated government securities account; (c) Clearing/Collateral Account; (d) segregated SEG 1 DTC account; and (e) DTC Clearing Account.

5.      "Loan" includes any extension of credit, secured or unsecured, regardless of duration, whether denominated as a loan, overdraft, or otherwise.

6.      "Relating to," "in relation to," and "regarding" mean analyzing, containing, concerning, dealing with, constituting, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, reflecting, setting forth, showing, stating, summarizing, supporting, contradicting, or in any way pertaining to the subject matter of any interrogatory.

2

1646147

7.    "Communication" includes all oral, written, or other exchange or transmission of information, regardless of whether made in person, by telephone, by electronic, or by any other means.

8.    "Document" is used herein in its broadest sense to encompass the full breadth of meaning permitted by the Federal Rules of Civil Procedure, and as used herein, it shall include all materials and tangible objects conveying or carrying spoken, visual, or literal substance, whether written, printed, typed, recorded, filmed, punched, transcribed, taped, produced, or reproduced by any means.  The term "document" means and includes without limitation all correspondence, notes, records, reports, memoranda, journals, logs, diaries, appointment books, facsimiles, messages, videotapes, photographs, voice recordings, invoices, checks, bills, billing records, financial statements, balance sheets, ledgers, accounting entries, files, and any other data compilations from which information can be obtained, including materials used in trial preparations for any proceeding.  The term "document" also means and includes all electronic documents and data, including without limitation, all e-mails (including the files attached thereto), electronic calendars, word processing documents, spreadsheets, presentation documents, archives, back up tapes discs or diskettes, CD-ROMs, DVDs, hard drives, laptops, personal computers, and voicemails.  A draft or non-identical copy (including a copy with handwritten notations) is a separate document.

9.    "Voice recording" is used herein in its broadest sense to encompass the full breadth of meaning permitted by the Federal Rules of Civil Procedure, and as used herein, it shall include all recordings of communications, whether written, printed, typed, recorded, filmed, transcribed, taped, or reproduced by any means.

10.     The terms "and" and "or" should be read in the disjunctive, conjunctive, or both, consistent with an interpretation that results in the broadest disclosure of information.

## INSTRUCTIONS

1.     If you object to any part of these Interrogatories, please (a) state each objection you assert in sufficient detail to permit the Court to determine the validity of the objection; and (b) disclose all responsive information to which your objection does not apply.

2.     If you claim that all or any part of these Interrogatories is vague or ambiguous, please identify the specific language you consider vague or ambiguous and state the interpretation of the language in question you used to frame your response.

3.     If you withhold information responsive to these Interrogatories based upon any claim of privilege, provide a log or index that includes at a minimum the following information: (a) the nature of the claim of non-disclosure, specific privilege asserted, or other particular reason you rely upon for not producing the information; (b) the identity of all persons having knowledge of any facts relating to the claim of non-disclosure or privilege; (c) a general description of the information withheld; (d) the identity of all persons who possess or claim to possess the information withheld; (e) the last known physical location of the information withheld; and (f) the identity of all documents relating to the claim of non-disclosure, privilege, or other reason for not producing the information withheld.

4.     These Interrogatories are continuing under Rule 26(e) of the Federal Rules of Civil Procedure.  If you obtain or become aware of additional information responsive to these Interrogatories after making your initial response, you are required to disclose the additional responsive information promptly.

5.     These Interrogatories cover the time periods specified below.

## INTERROGATORIES

**INTERROGATORY NO. 1.**    For the time period January 1, 1997 to August 31, 2007, identify the BONY Compliance and Internal Auditing employee(s), officer(s), agent(s), or other personnel who had supervisory and/or decision-making responsibility for BONY's relationship and transactions with Sentinel.

**INTERROGATORY NO. 2.**    For the time period January 1, 1997 to August 31, 2007, identify the BONY employee(s), officer(s), agent(s), or other personnel who had supervisory and/or decision-making responsibility for approval of all loans BONY made to Sentinel.

**INTERROGATORY NO. 3.**    Unless otherwise indicated, for the time period  January 1, 1997 to August 31, 2007, identify the BONY employee(s), officer(s), agent(s), or other personnel possessing the most knowledge about the following subjects, including, but not limited to, the existence, identity, location, and organization of documents or information regarding each subject:

    a.    BONY voice recordings relating to Sentinel, including, but not limited to, voice recordings of internal BONY communications, BONY communications with Sentinel, and BONY communications with third parties about Sentinel.

    b.    All internal manuals representing and/or containing guidelines, standards, policies, procedures, and/or practices of BONY's Institutional Custody Division and its Broker/Dealer Services Division, including, but not limited to, regulatory compliance manuals.

    c.    Futures Commission Merchants ("FCMs") for which BONY has performed or currently performs clearing and/or custody services, the agreements with those FCMs, and the structure of those FCM accounts at BONY.

    d.    BONY lending guidelines, standards, policies, procedures, and/or practices for making loans to FCMs and/or broker/dealers, including, but not limited to, those related to collateral for loans made to FCMs and/or broker/dealers.

e.      All documents relating to BONY guidelines, standards, policies, procedures, and/or practices regarding securities lending to FCMs and/or broker/dealers, including, but not limited to, those regarding the lending of securities owned by customers of such FCMs and/or broker/dealers.

f.       Any lending, credit, or executive or other committee meeting in which matters relating to Sentinel were discussed.

g.      The position or title and decision-making responsibilities of all BONY officers, employees, agents, and/or other personnel who were involved in the business relationship between Sentinel and BONY.

h.      Personnel files, including, but not limited to, employment and compensation agreements and annual or other periodic reviews for the following persons:

    (1)     Mark Aprahamian;

    (2)     Stephen C. Brennan;

    (3)     Joseph Ciacciarelli;

    (4)     Even Fraser;

    (5)     Bernard L. Lambert;

    (6)     Terence R. Law;

    (7)     Vincent A. Prestia;

    (8)     Mark T. Rogers;

    (9)     Brian A. Ruane;

    (10)    Michael Scarry; and

    (11)    Ronald Silk.

i.       The circumstances under which Sentinel initially became a BONY customer, including, but not limited to, any documents regarding BONY's preparation to bid on Sentinel's business, draft and final presentations to Sentinel, discussion documents, correspondence, and memoranda.

j.       Due diligence concerning any aspect of Sentinel or BONY's relationship with Sentinel conducted by or for BONY before and during the period Sentinel was a BONY customer.

k.      The establishment of the custodial relationship between Sentinel and BONY in 1997.

l.    BONY's guidelines, standards, policies, procedures, and/or practices for opening new customer accounts in its Institutional Custody Division and its Broker/Dealer Services Division.

m.    BONY's credit risk guidelines, standards, policies, procedures, and/or practices for accepting and/or evaluating new customers in its Institutional Custody Division and its Broker/Dealer Services Division.

n.    The transition of Sentinel's business within BONY from its Institutional Custody Division to its Broker/Dealer Services Division in or about 1997.

o.    Transfer or wire instructions issued or received by BONY when any Sentinel-related account was:

   (1)    initially transferred to BONY in or about March 1997; and

   (2)    transferred within BONY from its Institutional Custody Division to its Broker/Dealer Services Division in or about 1997.

p.    The structure of Sentinel accounts at BONY and the relationship between or among those accounts.

q.    Credit limits established by BONY for Sentinel and all changes in those credit limits initiated by BONY, including, but not limited to, results of any inquiries made by BONY regarding Sentinel's creditworthiness, licensing, registration, and/or professional qualifications.

r.    BONY's knowledge or understanding of Sentinel's business, Sentinel's use of the loan proceeds provided by BONY, Sentinel's proprietary trading activities, and the use and amount of leverage in Sentinel's securities portfolios and/or balance sheet.

s.    BONY guidelines, standards, policies, procedures, and/or practices for maintaining files relating to loans provided to Sentinel.

t.    BONY's complete loan files for Sentinel, including, but not limited to, general loan files regarding Sentinel, files regarding any loan made to Sentinel by BONY, and BONY risk management guidelines, standards, policies, procedures, and/or practices that applied to any loan BONY made to Sentinel.

u.    BONY guidelines, standards, policies, procedures, and/or practices for obtaining, maintaining, and updating knowledge of its customers and its customer suitability requirements.

v.    The scope and applicability of the following agreements between BONY and Sentinel:

   (1)    Securities Clearing Agreement, dated October 21, 1997;

(2)     Security Agreement, dated October 21, 1997;

(3)     Global Clearing and Custody Agreement, dated January 9, 2003; and

(4)     Security Agreement, dated January 9, 2003.

**INTERROGATORY NO. 4.**     Unless otherwise indicated, for the time period January 1, 2002 to August 31, 2007, identify the BONY employee(s), officer(s), agent(s), or other personnel possessing the most knowledge about the following subjects, including, but not limited to, the existence, identity, location, and organization of documents or information regarding each subject:

a.     Credit, account, and/or relationship reviews, analyses, reports, call reports, and/or presentations about Sentinel prepared by or for BONY.

b.     BONY communications with Sentinel.

c.     BONY reviews of Sentinel's audited and unaudited financial statements, trial balances, and CFTC Form 1-FRs.

d.     BONY Net Free Equity reports and/or calculations for Sentinel.

e.     Sentinel's ability to pledge, and BONY's ability to accept or otherwise use, Sentinel's customer securities as collateral for the loan BONY provided to Sentinel.

f.     BONY internal audits of Sentinel and/or internal audits regarding BONY's relationship with Sentinel, including, but not limited to, compliance by BONY and/or Sentinel with Sentinel customer fund segregation requirements.

g.     Communications between BONY's Compliance Division and its Institutional Custody Division and/or Broker/Dealer Services Division regarding Sentinel.

h.     BONY's external auditors' review of any Sentinel account at BONY, including, but not limited to, the auditors' review of the segregation of Sentinel's customer accounts and funds, loans provided to Sentinel by BONY, and related securities lending activities, as well as the auditors' observations regarding the general adequacy of the segregation of FCM and broker/dealer customer funds, the custodialization of Sentinel assets or Sentinel customer assets, and the handling, oversight, and recordkeeping of related loans made to Sentinel.

i.    Any evaluation by the Federal Reserve, New York State Banking Department, and/or other regulatory authority of the general controls and risk management practices relating to BONY's segregation and custodialization of customer accounts and funds, lending to FCMs and broker/dealers, and loans to Sentinel and/or businesses of similar or comparable nature.

j.    Federal Reserve and/or New York State Banking Department audits, reviews, and/or evaluations regarding BONY's relationship with Sentinel, including, but not limited to, compliance by BONY and/or Sentinel with Sentinel customer fund segregation requirements, as well as observations by those regulatory agencies regarding BONY's general ability to segregate customer funds adequately and comply with related legal and regulatory requirements and discussions or comments by those regulatory agencies regarding loans made to Sentinel and/or Sentinel's daylight overdrafts.

k.    BONY's methodology of pricing securities posted for, taken as, or otherwise used for collateral to secure Sentinel's loan and/or overdrafts.

l.    The operation of Daylight Overdrafts and Overnight Loans made to Sentinel, including, but not limited to, the relationship between credit extended to Sentinel during the day and Sentinel loans booked overnight and the basis for pricing overdrafts and loans involving Sentinel.

m.    Attempts by BONY and/or Sentinel to reduce Sentinel's loan balance during 2007, including, but not limited to, BONY's consideration of or response to Sentinel's efforts to reduce the loan balance.

n.    Any loan BONY provided to Sentinel on each day between May 1 and August 31, 2007, including, but not limited to, the amount of the loan, collateral posted, taken, or otherwise used as collateral for the loan, loan approvals and any related internal discussions necessary for those approvals, and overdrafts.

o.    BONY's decision to accept or reject particular securities as collateral for any loan provided to Sentinel on each day between May 1 and August 31, 2007, including, but not limited to, BONY's policy regarding the acceptance of physical securities as collateral and BONY's acceptance or rejection of physical securities as collateral for the loan made to Sentinel.

p.    BONY collateral and margin requirements for any loan provided to Sentinel on each day between May 1 and August 31, 2007, including, but not limited to, any changes in the amounts of post-margin collateral and post-margin coverage ratio requirements.

q.    The following transfers of Sentinel customer securities:

(1)    approximately $87 million in securities from the SEG 1 and SEG 3 segregated government securities accounts into the Clearing/Collateral Account on or about June 1, 2007;

9

(2)  approximately $66 million in securities from the SEG 1 and SEG 3 segregated government securities accounts into the Clearing/Collateral Account on or about June 26, 2007;

(3)  approximately $170 million in securities from the segregated SEG 1 DTC account into the DTC Clearing Account on or about June 29, 2007;

(4)  approximately $84 million in securities from the segregated SEG 1 DTC account into the DTC Clearing Account on or about July 17, 2007;

(5)  approximately $248 million in securities from the DTC Clearing Account into the segregated SEG 1 DTC account on or about July 30, 2007; and

(6)  approximately $264 million in securities out of the Clearing/Collateral Account into the SEG 1 segregated government securities account on or about July 31, 2007.

r.  BONY's application of Sentinel reverse repurchase proceeds to reduce the Sentinel loan balance on or about August 14, 2007.

s.  BONY's transfer of approximately $52 million in securities from a segregated customer account to the Clearing/Collateral Account on or about August 15, 2007.

t.  Documents regarding BONY's relationship and/or transactions with Sentinel that were prepared or reviewed by any person as part of the due diligence conducted for the 2007 merger between The Bank of New York, Inc. and Mellon Financial Corporation.

u.  BONY communications with actual or potential Sentinel customers, including, but not limited to, communications regarding the segregation of customer funds and/or securities, information about Sentinel, and Sentinel references.

v.  FX trading performed by BONY on behalf of Sentinel and/or its customers.

w.  BONY communications with the CFTC, NFA, and/or SEC regarding Sentinel.

x.  The segregation and other requirements of the following CEA, CFTC, and SEC rules in relation to Sentinel:

(1)  Section 4(b) of the CEA (7 U.S.C. § 6b);

(2)  Section 4d(a)(2) of the CEA (7 U.S.C. § 6d(a)(2));

(3)  Section 4d(b) of the CEA (7 U.S.C. § 6d(b));

(4)  CFTC Rule 1.20 and its subdivisions (17 C.F.R. § 1.20 *et seq.*);

(5)  CFTC Rule 1.25 and its subdivisions (17 C.F.R. § 1.25 *et seq.*);

1646147

(6)     CFTC Rule 1.26 (17 C.F.R. § 1.26);

(7)     CFTC Rule 1.49 (17 C.F.R. § 1.49);

(8)     CFTC Rule 30.7 (17 C.F.R. § 30.7); and

(9)     SEC Rule 206(4)-2 (17 C.F.R. § 275.206(4)-2).

y.     BONY's projected and actual revenue derived from Sentinel's business, including all sources of projected and actual revenue (including, but not limited to, interest revenue, service revenue, securities lending revenue, and revenue from all other fees and sources) and all methods of projecting and recording such revenue.

z.     Sentinel's sale of certain securities to Citadel Equity Fund, Ltd. and/or Citadel Limited Partnership in August 2007, including, but not limited to, the basis for determining the approximate value of those securities and the adequacy of the Citadel entities' proceeds in relation to the value of those securities.

aa.     BONY's clearing of repurchase transactions for Sentinel's segregated customer accounts.

bb.     BONY communications and records relating to Sentinel's repurchase agreement counterparties, including, but not limited to, internal BONY communications, BONY communications with Sentinel, and BONY communications with Sentinel's repurchase agreement counterparties.

1646147

Dated: April 29, 2008

Respectfully submitted,

FREDERICK J. GREDE, not individually but
as Chapter 11 Trustee of Sentinel Management
Group, Inc.

By: _____

One of his attorneys

John F. Kinney (ARDC # 1467867)
Chris C. Gair (ARDC # 6190781)
Vincent E. Lazar (ARDC # 6204916)
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL  60611
Phone: (312) 222-9350
Facsimile: (312) 527-0484

12

1646147

## CERTIFICATE OF SERVICE

I, Stephanie Reinhart, an attorney, hereby certify that I caused the foregoing **Trustee's**

**First Set of Interrogatories** to be served by electronic mail this 29th of April, 2008 upon:

Hector Gonzalez  
Matthew D. Ingber  
1675 Broadway  
New York, NY 10019  
(212) 506-2500

Sean T. Scott  
71 S. Wacker Drive  
Chicago, IL 60606  
(312) 782-0600

_____  
Stephanie Reinhart

1646147

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br>SENTINEL MANAGEMENT GROUP, INC.,<br>Debtor. | Chapter 11<br><br>Case No. 07 B 14987<br><br>Hon. John H. Squires |
| FREDERICK J. GREDE, as Chapter 11<br>Trustee for Sentinel Management Group, Inc.,<br>Plaintiff,<br><br>v.<br><br>THE BANK OF NEW YORK and THE<br>BANK OF NEW YORK MELLON CORP.,<br>Defendants. | <br><br><br><br>Adv. Proc. No. 08-127 |

**BNY'S RESPONSES AND OBJECTIONS TO
THE TRUSTEE'S FIRST SET OF INTERROGATORIES**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, as made applicable

by Rules 7026 and 7033 of the Federal Rules of Bankruptcy Procedure, defendants The Bank of

New York and The Bank of New York Mellon Corp ("BNY"), by its attorneys, hereby respond

and object the Trustee's First Set of Interrogatories, dated April 29, 2008 ("Interrogatories"), as

follows:

**GENERAL OBJECTIONS**

1.      BNY objects to the Interrogatories on the ground that the Trustee has exceeded

the number of interrogatories permitted by the Federal Rules of Civil Procedure.  Fed. R. Civ. P.

33(a)(1) states that "[u]nless otherwise stipulated or ordered by the court, a party may serve on

any other party no more than 25 written interrogatories, including all discrete subparts." Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); *see also* Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Each party is allowed to serve 25 interrogatories upon any other party …. Parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

The Interrogatories contain approximately 52 discrete requests for identification of BNY employees, some with additional subparts. Although the Trustee has identified 22 of the interrogatories as subparts of Interrogatory No. 3, and 28 of these interrogatories as subparts of Interrogatory No. 4, these inquiries are all discrete separate requests for identification of employees with information not related through a single common theme, and are only loosely connected by a relevant time period. Despite this weak association, several of the inquiries define a more specific date or period within the stated range, further demonstrating that the Trustee has attempted to circumvent the limitations imposed by the Federal Rules of Civil Procedure. Because the Trustee has exceeded the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1), BNY will only respond to the first 25 requests for identification contained in the Interrogatories. By so responding, BNY does not waive any rights to object to the number of interrogatories contained in the Trustee's First Set of Interrogatories, dated April 29, 2008.

2.      BNY's response to any request is not an admission or acknowledgement that such request calls for information that is relevant to the subject matter of this adversary proceeding, and it is without prejudice to its right to contend at trial or in any other subsequent proceeding in this adversary proceeding that such response is inadmissible, irrelevant, and/or not the proper basis for discovery.

3.      BNY objects to each request, definition and instruction contained in the Interrogatories to the extent that any interrogatory, definition or instruction contains an inaccurate, incomplete or misleading description of facts, persons, or events underlying this adversary proceeding.  The disclosure of information in response to the Interrogatories shall not constitute BNY's agreement with or acquiescence to, any such description.

4.      Nothing contained in any response herein shall be deemed to be an admission, concession or waiver by BNY as to the validity of any claim or defense asserted by any party in this adversary proceeding.

5.      BNY objects to the Interrogatories to the extent that they call for the disclosure of privileged information or communications, including, without limitation, information that was prepared, generated, or received for or in anticipation of litigation, information that constitutes attorney work product, or any other applicable privilege, rule of privacy or confidentiality, immunity, protection, or restriction that makes such information non-discoverable.  To the extent that any privileged information is provided inadvertently, BNY reserves: (i) its privileges with respect to such information; (ii) its right to object to the use of such information; and (iii) the right to object to the admissibility of such information.

6.      BNY objects to the Interrogatories to the extent that they seek information in the possession, custody, or control of persons or entities other than BNY.

7.     BNY objects to each of the Interrogatories to the extent that it seeks cumulative or duplicative information.

8.     BNY objects to the Interrogatories to the extent that they are vague, ambiguous, overly broad, unduly burdensome, oppressive, not susceptible to a reasoned interpretation, not reasonably particular and do not otherwise comply with the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and/or any applicable local rules.

9.     BNY objects to each of the Interrogotaties to the extent it is not limited to a reasonable period of time or the time period at issue in this adversary proceeding.

10.     BNY objects to each of the Interrogatories to the extent it calls for the disclosure of information in the public domain, already in the Trustee's possession, custody or control, or equally available to the Trustee.

11.     BNY objects to the Interrogatories and the instructions contained therein to the extent that they seek to impose obligations beyond those set forth in the Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure, and/or any applicable local rules.

12.     BNY reserves the right to rely, at the time of trial or in any other proceedings in this adversary proceeding, upon evidence in addition to that provided in the responses to the Requests regardless of whether, *inter alia*, any evidence is newly discovered or is currently in existence.  BNY is continuing its investigation and the information provided is true and correct to BNY's best knowledge at this particular time, but is subject to correction and modification as new facts are discovered.  To the extent BNY does discover additional information that would make any of the responses herein incorrect, BNY will supplement or amend those responses pursuant to Federal Rule of Civil Procedure 26(e).

13.     BNY objections to each of the Interrogatories to the extent that it seeks information that is neither relevant to the claim or defense of any party nor reasonably calculated to lead to the discovery of admissible evidence.  BNY's response is without prejudice to its right to contend at trial or in any other subsequent proceeding in this adversary proceeding that such response is inadmissible, irrelevant and/or not the proper basis for discovery.

14.     All objections as to the relevance or admissibility of any information provided in these responses are expressly reserved by BNY.

15.     An objection to an interrogatory shall not be construed to indicate that information responsive to that request actually exists.  Similarly, an undertaking to respond to an interrogatory shall not be construed to indicate that any such information exists.

16.     The foregoing General Objections shall be considered as made, to the extent applicable, in response to each of the Interrogatories as if the General Objections were fully set forth in each specific response, even if such response also sets forth specific objections.

## SPECIFIC OBJECTIONS

### Interrogatory No. 1:

*For the time period January 1, 1997 to August 31, 2007, identify the BONY Compliance and Internal Auditing employee(s), officer(s), agent(s), or other personnel who had supervisory and/or decision-making responsibility for BONY's relationship and transactions with Sentinel.*

### Response To Interrogatory No. 1:

BNY objects to this interrogatory on the grounds stated in the General Objections and on the grounds that it is vague and ambiguous.  BNY further objects to this interrogatory to the extent it assumes that Compliance and Internal Auditing employees, officers, agents, or other personnel had "supervisory and/or decision-making responsibility" for BNY's  "relationship and transactions with Sentinel."

Subject to and without waiving the foregoing objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding, BNY responds that, for different periods during the relevant date range, the following BNY employees have the most knowledge or information regarding "personnel who had supervisory and/or decision-making responsibility for BONY's relationship and transactions with Sentinel":

> Mark Aprahamian
> Kevin Caffrey
> Joseph Ciacciarelli
> Terence Law
> Brian Ruane

### Interrogatory No. 2:

*For the time period January 1, 1997 to August 31, 2007, identify the BONY employee(s), officer(s), agent(s), or other personnel who had supervisory and/or decision-making responsibility for approval of all loans BONY made to Sentinel.*

### Response To Interrogatory No. 2:

Subject to and without waiving the General Objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding, BNY responds that, for different periods during the relevant date range, the following BNY employees have the most knowledge or information relevant to this interrogatory:

> Stephen Brennan
> Joseph Ciacciarelli
> Evan Fraser
> Terence Law
> Mark Rogers
> Brian Ruane

### Interrogatory No. 3:

*Unless otherwise indicated, for the time period January 1, 1997 to August 31, 2007, identify the BONY employee(s), officer(s), agent(s), or other personnel possessing the most knowledge about the following subjects, including, but not limited to, the existence, identity, location, and organization of documents or information regarding each subject:*

Interrogatory No. 3(a):

a.      *BONY voice recordings relating to Sentinel, including, but not limited to, voice recordings of internal BONY communications, BONY communications with Sentinel, and BONY communications with third parties about Sentinel.*

Response To Interrogatory No. 3(a):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the grounds that the phrase "voice recordings relating to Sentinel" is vague and ambiguous in that it is unclear whether the Trustee is seeking technical information regarding the maintenance of those files, or information regarding the substance or content of the voice recordings regarding Sentinel.

Subject to and without waiving the foregoing objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding, BNY responds that, for different periods during the relevant date range, the following BNY employees have general knowledge or information regarding voice recordings, including those that may relate to Sentinel:

Mark Aprahamian
Evan Fraser

Interrogatory No. 3(b):

b.      *All internal manuals representing and/or containing guidelines, standards, policies, procedures, and/or practices of BONY's Institutional Custody Division and its Broker/Dealer Services Division, including, but not limited to, regulatory manuals.*

Response To Interrogatory No. 3(b):

BNY objects to this interrogatory on the grounds stated in the General Objections and on the grounds that it is overbroad and unduly burdensome.  BNY further objects to this interrogatory on the ground that it is neither relevant to any claim or defense asserted in this adversary proceeding, nor reasonably calculated to lead to the discovery of admissible evidence

7

in that the Trustee seeks information related to the Institutional Custody Division for the period

January 1, 1997 through August 31, 2007 even though Sentinel was a client of the Institutional

Custody Division only in 1997.

Subject to and without waiving the foregoing objections, and without waiving BNY's

right to amend or supplement its answers either during or after discovery in this adversary

proceeding, BNY responds that, Chris Mason has knowledge or information relevant to this

interrogatory.

<u>Interrogatory No. 3(c):</u>

c.   *Futures Commission Merchants ("FCMs") for which BONY has performed or*
     *currently performs clearing and/or custody services, the agreements with those*
     *FCMs, and the structure of those FCM accounts at BONY.*

<u>Response To Interrogatory No. 3(c):</u>

BNY objects to this interrogatory on the grounds stated in the General Objections. BNY

further objects on the ground that information about customers other than Sentinel is neither

relevant to any claim or defense asserted in this adversary proceeding, nor reasonably calculated

to lead to the discovery of admissible evidence, and, therefore, an interrogatory seeking persons

with such knowledge is irrelevant. Moreover, BNY objects to this interrogatory on the grounds

that it requests the identification of confidential and proprietary information.

<u>Interrogatory No. 3(d):</u>

d.   *BONY lending guidelines, standards, policies, procedures, and/or practices for*
     *making loans to FCMs and/or broker/dealers, including, but not limited to, those*
     *related to collateral for loans made to FCMs and/or broker/dealers.*

<u>Response To Interrogatory No. 3(d):</u>

BNY objects to this interrogatory on the grounds stated in the General Objections and on

the ground that it seeks information that is neither relevant to any claim or defense asserted in

this adversary proceeding, nor reasonably calculated to lead to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding, BNY responds that, for different periods during the relevant date range, the following BNY employees have the most knowledge or information relevant to this interrogatory:

> Stephen Brennan
> Joseph Ciacciarelli
> Terence Law
> Mark Rogers
> Brian Ruane

### Interrogatory No. 3(e):

> e.      *All documents relating to BONY guidelines, standards, policies, procedures, and/or practices regarding securities lending to FCMs and/or broker/dealers, including, but not limited to, those regarding the lending of securities owned by customers of such FCMs and/or broker/dealers.*

### Response To Interrogatory No. 3(e):

BNY objects to this interrogatory on the grounds stated in the General Objections and on the grounds that the phrase "lending of securities owned by customers of such FCMs and/or broker/dealers" is vague and ambiguous.  BNY further objects to this interrogatory to the extent it assumes that BNY engaged in "the lending of securities owned by customers of such FCMs and/or broker/dealers."

### Interrogatory No. 3(f):

> f.      *Any lending, credit, or executive or other committee meeting in which matters relating to Sentinel were discussed.*

<u>Response To Interrogatory No. 3(f):</u>

Subject to and without waiving the General Objections, and without waiving BNY's right

to amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that, for different periods during the relevant date range, the following BNY

employees have the most knowledge or information relevant to this interrogatory:

Stephen Brennan
Joseph Ciacciarelli
Terence Law
Mark Rogers
Brian Ruane

<u>Interrogatory No. 3(g):</u>

g.    *The position or title and decision-making responsibilities of all BONY officers,*
      *employees, agents, and/or other personnel who were involved in the business*
      *relationship between Sentinel and BONY.*

<u>Response To Interrogatory No. 3(g):</u>

Subject to and without waiving the General Objections, and without waiving BNY's right

to amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that Joseph Ciacciarelli has the most knowledge or information relevant to this

interrogatory.

<u>Interrogatory No. 3(h):</u>

h.    *Personnel files, including, but not limited to, employment and compensation*
      *agreements and annual or other periodic reviews for the following persons:*
      *(1) Mark Aprahamian; (2) Stephen C. Brennan; (3) Joseph Ciacciarelli; (4) Evan*
      *Fraser; (5) Bernard L. Lambert; (6) Terence R. Law; (7) Vincent A. Prestia;*
      *(8) Mark T. Rogers; (9) Brian A. Ruane; (10) Michael Scarry; and (11) Ronald*
      *Silk.*

<u>Response To Interrogatory No. 3(h):</u>

BNY objects to this interrogatory on the grounds stated in the General Objections and on the ground that it seeks information that is neither relevant to an claim or defense asserted in this adversary proceeding nor reasonably calculated to the discovery of admissible evidence.

Subject to and without waiving the foregoing objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding, BNY responds that each of the individuals listed in Interrogatory 3(h) have the most knowledge or information relevant to their own personnel files, including employment and compensation agreements and annual or other periodic reviews.

<u>Interrogatory No. 3(i):</u>

i.      *The circumstances under which Sentinel initially became a BONY customer, including, but not limited to, any documents regarding BONY's preparation to bid on Sentinel's business, draft and final presentations to Sentinel, discussion documents, correspondence, and memoranda.*

<u>Response To Interrogatory No. 3(i):</u>

Subject to and without waiving the General Objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding, BNY responds that Joseph Ciacciarelli has knowledge or information relevant to this interrogatory.

<u>Interrogatory No. 3(j):</u>

j.      *Due diligence concerning any aspect of Sentinel or BONY's relationship with Sentinel conducted by or for BONY before and during the period Sentinel was a BONY customer.*

<u>Response To Interrogatory No. 3(j):</u>

Subject to and without waiving the General Objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that, for different periods during the relevant date range, the following BNY

employees have the most knowledge or information relevant to this interrogatory:

> Stephen Brennan
> Joseph Ciacciarelli
> Terence Law
> Bernard Lambert

## Interrogatory No. 3(k):

k.      *The establishment of the custodial relationship between Sentinel and BONY in 1997.*

## Response To Interrogatory No. 3(k):

Subject to and without waiving the General Objections, and without waiving BNY's right

to amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that Joseph Ciacciarelli has knowledge or information relevant to this

interrogatory.

## Interrogatory No. 3(l):

l.      *BONY's guidelines, standards, policies, procedures, and/or practices for opening new customer accounts in its Institutional Custody Division and its Broker/Dealer Services Division.*

## Response To Interrogatory No. 3(l):

BNY objects to this interrogatory on the grounds stated in the General Objections and on

the grounds that it is overbroad and unduly burdensome.  BNY further objects to this

interrogatory on the ground that it is neither relevant to any claim or defense asserted in this

adversary proceeding, nor reasonably calculated to lead to the discovery of admissible evidence

in that the Trustee seeks information related to the Institutional Custody Division for the period

January 1, 1997 through August 31, 2007 even though Sentinel was a client of the Institutional

Custody Division only in 1997.

Subject to and without waiving the foregoing objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding, BNY responds that, for different periods during the relevant date range, the following individuals, among others, have the most knowledge or information with respect to the portion of this interrogatory addressing Broker/Dealer Services:

> Joseph Ciacciarelli
> Christopher Mason
> Vincent Prestia

<u>Interrogatory No. 3(m):</u>

m.    *BONY's credit risk guidelines, standards, policies, procedures, and/or practices for accepting and/or evaluating new customers in its Institutional Custody Division and its Broker/Dealer Services Division.*

<u>Response To Interrogatory No. 3(m):</u>

BNY objects to this interrogatory on the grounds stated in the General Objections and on the grounds that it is overbroad and unduly burdensome.  BNY further objects to this interrogatory on the ground that it is neither relevant to any claim or defense asserted in this adversary proceeding, nor reasonably calculated to lead to the discovery of admissible evidence in that the Trustee seeks information related to the Institutional Custody Division for the period January 1, 1997 through August 31, 2007 even though Sentinel was a client of the Institutional Custody Division only in 1997.

Subject to and without waiving the foregoing objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding, BNY responds that, for different periods during the relevant date range, the following individuals, among others, have the most knowledge or information with respect to the portion of this interrogatory addressing Broker/Dealer Services:

Stephen Brennan
Mark Rogers

Interrogatory No. 3(n):

n.      The transition of Sentinel's business within BONY from its Institutional Custody
         Division to its Broker/Dealer Services Division in or about 1997.

Response To Interrogatory No. 3(n):

Subject to and without waiving the General Objections, and without waiving BNY's right

to amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that Joseph Ciacciarelli has knowledge or information relevant to this

interrogatory.

Interrogatory No. 3(o):

o.      Transfer or wire instructions issued or received by BONY when any Sentinel-
         related account was:

         (1)     initially transferred to BONY in or about March 1997; and

         (2)     transferred within BONY from its Institutional Custody Division to its
                  Broker/Dealer Services Division in or about 1997.

Response To Interrogatory No. 3(o):

Subject to and without waiving the General Objections, and without waiving BNY's right

to amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that, to the best of its current knowledge, Joseph Ciacciarelli has knowledge or

information relevant to the portion of this interrogatory addressing the transfer from BNY's

Institutional Custody Division to its Broker/Dealer Services Division.

Interrogatory No. 3(p):

p.      The structure of Sentinel accounts at BONY and the relationship between or
         among those accounts.

14

Response To Interrogatory No. 3(p):

Subject to and without waiving the General Objections, and without waiving BNY's right

to amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that the following BNY employees have the most knowledge or information

relevant to this interrogatory:

> Mark Aprahamian
> Joseph Ciacciarreli
> Vincent Prestia

Interrogatory No. 3(q):

q.    *Credit limits established by BONY for Sentinel and all changes in those credit
      limits initiated by BONY, including, but not limited to, results of any inquiries
      made by BONY regarding Sentinel's creditworthiness, licensing, registration,
      and/or professional qualifications.*

Response To Interrogatory No. 3(q):

Subject to and without waiving General Objections, and without waiving BNY's right to

amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that, for different periods during the relevant date range, the following BNY

employees have the most knowledge or information relevant to this interrogatory:

> Stephen Brennan
> Joseph Ciacciarelli
> Terence Law
> Mark Rogers
> Brian Ruane

Interrogatory No. 3(r):

r.    *BONY's knowledge or understanding of Sentinel's business, Sentinel's use of the
      loan proceeds provided by BONY, Sentinel's proprietary trading activities, and
      the use and amount of leverage in Sentinel's securities portfolios and/or balance
      sheet.*

<u>Response To Interrogatory No. 3(r):</u>

Subject to and without waiving General Objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding, BNY responds that, for different periods during the relevant date range, the following BNY employees have the most knowledge or information relevant to this interrogatory:

> Stephen Brennan
> Joseph Ciacciarelli
> Terrence Law

<u>Interrogatory No. 3(s):</u>

s.      *BONY guidelines, standards, policies, procedures, and/or practices for maintaining files relating to loans provided to Sentinel.*

<u>Response To Interrogatory No. 3(s):</u>

Subject to and without waiving General Objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding, BNY responds that, for different periods during the relevant date range, the following BNY employees have the most knowledge or information relevant to this interrogatory:

> Joseph Ciacciarelli
> Evan Fraser
> Terrence Law

<u>Interrogatory No. 3(t):</u>

t.      *BONY's complete loan files for Sentinel, including, but not limited to, general loan files regarding Sentinel, files regarding any loan made to Sentinel by BONY, and BONY risk management guidelines, standards, policies, procedures, and/or practices that applied to any loan BONY made to Sentinel.*

<u>Response To Interrogatory No. 3(t):</u>

Subject to and without waiving General Objections, and without waiving BNY's right to amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that, for different periods during the relevant date range, the following BNY

employees have the most knowledge or information relevant to this interrogatory:

> Stephen Brennan
> Joseph Ciacciarelli
> Evan Fraser
> Terence Law
> Mark Rogers

<u>Interrogatory No. 3(u):</u>

u.     *BONY guidelines, standards, policies, procedures, and/or practices for obtaining, maintaining, and updating knowledge of its customers and its customer suitability requirements.*

<u>Response To Interrogatory No. 3(u):</u>

Subject to and without waiving General Objections, and without waiving BNY's right to

amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that, for different periods during the relevant date range, the following BNY

employees have the most knowledge or information relevant to this interrogatory:

> Joseph Ciacciarelli
> Terence Law

<u>Interrogatory No. 3(v):</u>

v.     *The scope and applicability of the following agreements between BONY and Sentinel:*

(1)     *Securities Clearing Agreement, dated October 21, 1997;*

(2)     *Security Agreement, dated October 21, 1997;*

(3)     *Global Clearing and Custody Agreement, dated January 9, 2003; and*

(4)     *Security Agreement, dated January 9, 2003.*

<u>Response To Interrogatory No. 3(v):</u>

Subject to and without waiving the General Objections, and without waiving BNY's right

to amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that the following BNY employees have the most knowledge or information

relevant to this interrogatory:

> Mark Aprahamian
> Gary Buki
> Joseph Ciacciarelli

## Interrogatory No. 4:

*Unless otherwise indicated, for the time period January 1, 2002 to August 31, 2007, identify the BONY employee(s), officer(s), agent(s), or other personnel possessing the most knowledge about the following subjects, including, but not limited to, the existence, identity, location, and organization of documents or information regarding each subject:*

## Interrogatory No. 4(a):

a.      *Credit, account, and/or relationship reviews, analyses, reports, call reports, and/or presentations about Sentinel prepared by or for BONY.*

## Response To Interrogatory No. 4(a):

Subject to and without waiving General Objections, and without waiving BNY's right to

amend or supplement its answers either during or after discovery in this adversary proceeding,

BNY responds that, for different periods during the relevant date range, the following BNY

employees have the most knowledge or information relevant to this interrogatory:

> Stephen Brennan
> Joseph Ciacciarelli
> Bernard Lambert
> Terence Law
> Mark Rogers

## Interrogatory No. 4(b):

b.      *BONY communications with Sentinel.*

## Response To Interrogatory No. 4(b):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on

the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1).

Subparts of an interrogatory concerning a common theme are to be considered a single question,

whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(c):

c.      *BONY reviews of Sentinel's audited and unaudited financial statements, trial balances, and CFTC Form 1-FRs.*

Response To Interrogatory No. 4(c):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through

the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(d):

     d.     *BONY Net Free Equity reports and/or calculations for Sentinel.*

Response To Interrogatory No. 4(d):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(e):

     e.     *Sentinel's ability to pledge, and BONY's ability to accept or otherwise use, Sentinel's customer securities as collateral for the loan BONY provided to Sentinel.*

Response To Interrogatory No. 4(e):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question,

20

whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(f):

> f.      *BONY internal audits of Sentinel and/or internal audits regarding BONY's relationship with Sentinel, including, but not limited to, compliance by BONY and/or Sentinel with Sentinel customer fund segregation requirements.*

Response To Interrogatory No. 4(f):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through

the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(g):

g.     *Communications between BONY's Compliance Division and its Institutional Custody Division and/or Broker/Dealer Services Division regarding Sentinel.*

Response To Interrogatory No. 4(g):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(h):

h.     *BONY's external auditors' review of any Sentinel account at BONY, including, but not limited to, the auditors' review of the segregation of Sentinel's customer accounts and funds, loans provided to Sentinel by BONY, and related securities lending activities, as well as the auditors' observations regarding the general adequacy of the segregation of FCM and broker/dealer customer funds, the custodialization of Sentinel assets or Sentinel customer assets, and the handling, oversight, and recordkeeping of related loans made to Sentinel.*

22

<u>Response To Interrogatory No. 4(h):</u>

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

<u>Interrogatory No. 4(i):</u>

i.    *Any evaluation by the Federal Reserve, New York State Banking Department, and/or other regulatory authority of the general controls and risk management practices relating to BONY's segregation and custodialization of customer accounts and funds, lending to FCMs and broker/dealers, and loans to Sentinel and/or businesses of similar or comparable nature.*

<u>Response To Interrogatory No. 4(i):</u>

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES*

*Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(j):

> j.    *Federal Reserve and/or New York State Banking Department audits, reviews, and/or evaluations regarding BONY's relationship with Sentinel, including, but not limited to, compliance by BONY and/or Sentinel with Sentinel customer fund segregation requirements, as well as observations by those regulatory agencies regarding BONY's general ability to segregate customer funds adequately and comply with related legal and regulatory requirements and discussions or comments by those regulatory agencies regarding loans made to Sentinel and/or Sentinel's daylight overdrafts.*

Response To Interrogatory No. 4(j):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through

the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(k):

k.      *BONY's methodology of pricing securities posted for, taken as, or otherwise used for collateral to secure Sentinel's loan and/or overdrafts.*

Response To Interrogatory No. 4(k):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(l):

l.      *The operation of Daylight Overdrafts and Overnight Loans made to Sentinel, including, but not limited to, the relationship between credit extended to Sentinel during the day and Sentinel loans booked overnight and the basis for pricing overdrafts and loans involving Sentinel.*

Response To Interrogatory No. 4(l):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1).

25

Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(m):

> m.    *Attempts by BONY and/or Sentinel to reduce Sentinel's loan balance during 2007, including, but not limited to, BONY's consideration of or response to Sentinel's efforts to reduce the loan balance.*

Response To Interrogatory No. 4(m):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through

the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

### Interrogatory No. 4(n):

n.    Any loan BONY provided to Sentinel on each day between May 1 and August 31, 2007, including, but not limited to, the amount of the loan, collateral posted, taken, or otherwise used as collateral for the loan, loan approvals and any related internal discussions necessary for those approvals, and overdrafts.

### Response To Interrogatory No. 4(n):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

### Interrogatory No. 4(o):

o.    BONY's decision to accept or reject particular securities as collateral for any loan provided to Sentinel on each day between May 1 and August 31, 2007, including, but not limited to, BONY's policy regarding the acceptance of physical securities as collateral and BONY's acceptance or rejection of physical securities as collateral for the loan made to Sentinel.

Response To Interrogatory No. 4(o):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(p):

p.      *BONY collateral and margin requirements for any loan provided to Sentinel on each day between May 1 and August 31, 2007, including, but not limited to, any changes in the amounts of post-margin collateral and post-margin coverage ratio requirements.*

Response To Interrogatory No. 4(p):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES*

28

*Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(q):

q.    *The following transfers of Sentinel customer securities:*

(1)    *approximately $87 million in securities from the SEG 1 and SEG 3 segregated government securities accounts into the Clearing/Collateral Account on or about June 1, 2007;*

(2)    *approximately $66 million in securities from the SEG 1 and SEG 3 segregated government securities accounts into the Clearing/Collateral Account on or about June 26, 2007;*

(3)    *approximately $170 million in securities from the segregated SEG 1 DTC account into the DTC Clearing Account on or about June 29, 2007;*

(4)    *approximately $84 million in securities from the segregated SEG 1 DTC account into the DTC Clearing Account on or about July 17, 2007;*

(5)    *approximately $248 million in securities from the DTC Clearing Account into the segregated SEG 1 DTC account on or about July 30, 2007; and*

(6)    *approximately $264 million in securities out of the Clearing/Collateral Account into the SEG 1 segregated government securities account on or about July 31, 2007.*

Response To Interrogatory No. 4(q):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin*

29

*Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(r):

    r.      *BONY's application of Sentinel reverse repurchase proceeds to reduce the Sentinel loan balance on or about August 14, 2007.*

Response To Interrogatory No. 4(r):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See, e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

<u>Interrogatory No. 4(s):</u>

s.     *BONY's transfer of approximately $52 million in securities from a segregated customer account to the Clearing/Collateral Account on or about August 15, 2007.*

<u>Response To Interrogatory No. 4(s):</u>

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

<u>Interrogatory No. 4(t):</u>

t.     *Documents regarding BONY's relationship and/or transactions with Sentinel that were prepared or reviewed by any person as part of the due diligence conducted for the 2007 merger between The Bank of New York, Inc. and Mellon Financial Corporation.*

<u>Response To Interrogatory No. 4(t):</u>

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question,

whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

<u>Interrogatory No. 4(u):</u>

u.     *BONY communications with actual or potential Sentinel customers, including, but not limited to, communications regarding the segregation of customer funds and/or securities, information about Sentinel, and Sentinel references.*

<u>Response To Interrogatory No. 4(u):</u>

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate

subjects.").

Interrogatory No. 4(v):

v.    *FX trading performed by BONY on behalf of Sentinel and/or its customers.*

Response To Interrogatory No. 4(v):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(w):

w.    *BONY communications with the CFTC, NFA, and/or SEC regarding Sentinel.*

Response To Interrogatory No. 4(w):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin*

*Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(x):

    x.    *The segregation and other requirements of the following CEA, CFTC, and SEC rules in relation to Sentinel:*

    (1)    *Section 4(b) of the CEA (7 U.S.C. § 6b);*

    (2)    *Section 4d(a)(2) of the CEA (7 U.S.C. § 6d(a)(2));*

    (3)    *Section 4d(b) of the CEA (7 U.S.C. § 6d(b));*

    (4)    *CFTC Rule 1.20 and its subdivisions (17 C.F.R. § 1.20 et seq.);*

    (5)    *CFTC Rule 1.25 and its subdivisions (17 C.F.R. § 1.25 et seq.);*

    (6)    *CFTC Rule 1.26 (17 C.F.R. § 1.26);*

    (7)    *CFTC Rule 1.49 (17 C.F.R. § 1.49);*

    (8)    *CFTC Rule 30.7 (17 C.F.R. § 30.7); and*

    (9)    *SEC Rule 206(4)-2 (17 C.F.R. § 275.206(4)-2).*

Response To Interrogatory No. 4(x):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See, e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin*

*Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

<u>Interrogatory No. 4(y):</u>

y.    *BONY's projected and actual revenue derived from Sentinel's business, including all sources of projected and actual revenue (including, but not limited to, interest revenue, service revenue, securities lending revenue, and revenue from all other fees and sources) and all methods of projecting and recording such revenue.*

<u>Response To Interrogatory No. 4(y):</u>

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(z):

z.      *Sentinel's sale of certain securities to Citadel Equity Fund, Ltd. and/or Citadel Limited Partnership in August 2007, including, but not limited to, the basis for determining the approximate value of those securities and the adequacy of the Citadel entities' proceeds in relation to the value of those securities.*

Response To Interrogatory No. 4(z):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(aa):

aa.      *BONY's clearing of repurchase transactions for Sentinel's segregated customer accounts.*

Response To Interrogatory No. 4(aa):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory.  *See*,

*e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Interrogatory No. 4(bb):

> bb.     *BONY communications and records relating to Sentinel's repurchase agreement counterparties, including, but not limited to, internal BONY communications, BONY communications with Sentinel, and BONY communications with Sentinel's repurchase agreement counterparties*

Response To Interrogatory No. 4(bb):

BNY objects to this interrogatory on the grounds stated in the General Objections, and on the ground that it exceeds the number of interrogatories permitted by Fed. R. Civ. P. 33(a)(1). Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001); *see also Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory … if they are logically or factually subsumed within and necessarily related to the primary question."); Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through

37

the device of joining as 'subparts' questions that seek information about discrete separate subjects.").

Dated:  June 2, 2008

THE BANK OF NEW YORK and
THE BANK OF NEW YORK MELLON CORP.

By:  _____
            Hector Gonzalez
            Matthew D. Ingber

MAYER BROWN LLP
1675 Broadway
New York, New York  10019
(212) 506-2500

-and-

Sean T. Scott

MAYER BROWN LLP
71 S. Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

**Verification**

I, Joseph Ciacciarelli, a Managing Director of defendant The Bank of New York ("BNY"), declare under penalty of

perjury that I am a duly authorized representative of BNY, that I have read the above Responses and Objections to

the Trustee's First Set of Interrogatories, and that the responses contained therein are true, complete and accurate to

the best of my knowledge.

_____
Joseph Ciacciarelli

Dated:  New York, New York
June 2, 2008

CHRISTOPHER P RONCO
Notary Public, State of New York
No. 01RO6072541
Qualified in Westchester County
Commission Expires April 8, 2010

## CERTIFICATE OF SERVICE

I, Rebecca S. Kahan, an attorney, hereby certify that on this 2nd day of June, 2008, I caused a true and correct copy of the attached *BNY's Responses and Objections to the Trustee's First Set of Interrogatories* to be served via e-mail upon counsel for the Trustee, with permission, at the following email addresses:

> *jkinney@jenner.com*
> *cgair@jenner.com*
> *rblazejowski@jenner.com*

Rebecca S. Kahan