**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

———————————————————————

|  |  |
|---|---|
| **FREDERICK J. GREDE**, as Chapter 11 Trustee for Sentinel Management Group, Inc., | ) ) ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| **THE BANK OF NEW YORK** and **THE BANK OF NEW YORK MELLON CORP.**, | ) ) ) |
|  | ) |
| Defendants. | ) |

Case No. 08 CV 2582

Hon. James B. Zagel

———————————————————————

**DEFENDANTS' OPPOSITION TO THE**
**TRUSTEE'S MOTION TO COMPEL**

Brian Trust
Hector Gonzalez
Matthew D. Ingber
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2500

Sean T. Scott
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

*Attorneys for Defendants*

Defendants The Bank of New York ("BNY") and The Bank of New York Mellon Corp. hereby submit this opposition to the Trustee's Motion to Compel Answers to Interrogatories, or Alternatively, For Leave to Serve Additional Interrogatories (the "Motion to Compel"), and in support thereof respectfully state as follows.

## BACKGROUND

On April 29, 2008, Frederick R. Grede (the "Trustee"), Chapter 11 Trustee for Sentinel Management Group, Inc. ("Sentinel") served upon BNY the Trustee's First Set of Interrogatories (the "Interrogatories"). These Interrogatories, though numbered "1" through "4" by the Trustee, contain approximately 52 discrete requests for identification of BNY employees, some with additional subparts. *See generally* Interrogatories, Trustee's Ex. A. Although the Trustee has identified at least twenty-two of his inquiries as subparts of Interrogatory No. 3, and at least twenty-eight of his inquiries as subparts of Interrogatory No. 4, these inquiries are all discrete separate requests for identification of employees with information only loosely connected in each case by a relevant time period. *See id.* at 5-11.

In its Responses and Objections to the Interrogatories, BNY objected on the ground, among others, that the Interrogatories exceeded the number of interrogatories permitted by the Federal Rules of Civil Procedure, which do not permit the joining as "subparts" questions that seek information about discrete separate subjects. Consistent with the guidance available in this circuit, BNY provided responses to the first 25 discrete inquiries.[1] *See* BNY Responses and

---

[1]     *See Talevski v. Carter*, No. 2: 05 CV 184, 2007 WL 1797634, at *4 (N.D. Ind. June 18, 2007) (endorsing litigant's method of objecting to interrogatories she believed were in excess of the number permitted by answering only some of the interrogatories propounded, and noting that "within the Seventh Circuit, there is no support for a rule that prescribes a single acceptable manner of objecting to an excessive number of interrogatories.")

Objections, Trustee's Ex. B, at 5-18.  In making this objection, BNY cited to case law as well as the Advisory Committee Note to Fed. R. Civ. P. 33 in support of its position.  *Id.* at 1-2, 18-38.

At the parties' first conference, on June 18, 2008, to discuss this objection (among other discovery disputes yet to be resolved but not raised by the Motion to Compel), the Trustee explained that his purpose in serving the Interrogatories on BNY was to lessen the need to rely on Rule 30(b)(6) depositions to gather this information.  *See* Email Correspondence Between Jenner & Block LLP and Mayer Brown LLP, attached hereto as Ex. A.  Therefore, taking the Trustee at his word, and acknowledging the efficiencies that would be gained from such an approach notwithstanding that the Interrogatories greatly exceeded the number permitted under the Federal Rules, via teleconference on July 1, 2008 BNY proposed to answer the remaining interrogatories, subject to the following conditions:   (i) the Trustee agrees not to serve any additional interrogatories on BNY in this action; (ii) the Trustee agrees to give BNY an equal number of interrogatories in this action; and (iii) the Trustee agrees to exclude the topics covered by the interrogatories from his 30(b)(6) deposition notices in this action (*i.e.*, the identity of those individuals with relevant knowledge of the issues identified in the Interrogatories).  *Id.*

The next day via email, the Trustee responded to BNY's proposal by stating that

> [W]e cannot accept the conditions you attached to [BNY's] providing substantive responses to all our interrogatories.  Unless we hear otherwise by the [close of business] on Wednesday, July 9, we will assume [BNY] does not intend to provide responses to the interrogatories to which it has objected and we will proceed accordingly.

*Id.*  The Trustee provided no indication why he rejected BNY's proposal, and the Trustee made this assertion even though BNY in fact explicitly ***had*** offered to provide responses to all of his interrogatories.  *Id.*  Throughout the parties' one-sided negotiations regarding the Interrogatories, the Trustee never offered an alternative counting of the number of interrogatories he served, and

refused even to offer an explanation of how his 52 discrete requests for information nevertheless could be construed as merely four interrogatories.

Now—after no meaningful participation from the Trustee in negotiations regarding the Interrogatories, even though the parties have other pending discovery disputes that have yet to be resolved, and notwithstanding BNY's efforts in good faith to resolve this dispute—the Trustee has filed his Motion to Compel. The Motion to Compel, which disregards the Federal Rules of Civil Procedure and is a waste of the Court's and the parties' resources, should be denied.

## ARGUMENT

I. **THE TRUSTEE HAS EXCEEDED THE NUMBER OF INTERROGATORIES PERMITTED BY THE FEDERAL RULES OF CIVIL PROCEDURE**

### A. The Trustee Has Improperly Sought to Join as "Subparts" Questions that Seek Information About Discrete Separate Subjects

Fed. R. Civ. P. 33(a)(1) states that "[u]nless otherwise stipulated or ordered by the court, a party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Subparts of an interrogatory concerning a common theme are to be considered a single question, whereas subparts that inquire into discrete areas are counted as more than one interrogatory. *See*, *e.g.*, *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 664-65 (D. Kan. 2004) (acknowledging rule that subparts pertaining to a common theme should be considered a single question, but "subparts that inquire into discrete areas should, in most cases, be counted as more than one interrogatory"); *Nyfield v. Virgin Islands Telephone Corp.*, 200 F.R.D. 246, 247-48 (D.V.I. 2001) (determining whether subparts are separate interrogatories by examining whether a subsequent question can stand alone or is independent of the first question); *Kendall v. GES Exposition Servs, Inc.*, 174 F.R.D. 684, 685 (D. Nev. 1997) ("[I]nterrogatory subparts are to be counted as one interrogatory . . . if they are logically or factually subsumed

within and necessarily related to the primary question."); *see also* Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. 401, 675-76 (1993) ("Parties cannot evade this presumptive limitation [of 25 interrogatories] through the device of joining as 'subparts' questions that seek information about discrete separate subjects."); *Talevski v. Carter*, No. 2: 05 CV 184, 2007 WL 1797634, at *5 (N.D. Ind. June 18, 2007). In *Talevski*, the court found that "interrogatories that ask for the name, address, and dates of Talevski's past employment become more than one interrogatory when the subparts ask for the details regarding any disciplinary incident that occurred while employed." *Id.*[2]

Here, BNY has not disputed that Interrogatories No. 1 and 2 each may be counted as a single interrogatory. By contrast, Interrogatories Nos. 3 and 4 comprise approximately 50 discrete inquires, and should be counted as such under Rule 33(a)(1). Interrogatory No. 3 requests individuals with knowledge of at least twenty-two discrete subjects, which the Trustee has linked together only by the date range January 1, 1997 through August 31, 2007.[3]

---

[2]     The Trustee's contention that this rule "has not been adopted in the Seventh Circuit" is baseless. *See* Trustee's Br. at 3 and n.1 (citing *Bell v. Woodward Governor Co.*, No. 03 C 50190, 2005 WL 3829134, at *1 (N.D. Ill. June 30, 2005), a magistrate opinion from within the Seventh Circuit that followed this rule). Not only do the Advisory Committee Notes to Rule 33 make clear that "parties cannot evade this presumptive limitation through the device of joining as 'subparts' questions that seek information about discrete separate subjects," Fed. R. Civ. P. 33 Advisory Committee Note, 146 F.R.D. at 675-76, but the Trustee has failed to offer any Seventh Circuit decision rejecting this analysis. Indeed, as the Trustee acknowledges, other courts within the Seventh Circuit *have* followed this basic principle. *See, e.g.*, *Talevski*, 2007 WL 1797634, at *5; *Bell*, 2005 WL 3829134, at *1.

[3]     Specifically, Interrogatory No. 3 inquires into the following discrete topics: (1) BNY voice recordings, (2) BNY's policy manuals, (3) futures commissions merchants ("FCMs") for which BNY has had a relationship, (4) BNY lending guidelines (and documents relating to those guidelines) related to FCMs, (5) BNY lending guidelines (and documents relating to those guidelines) related to broker-dealers, (6) committee meetings in which Sentinel was discussed, (7) BNY officers who were involved with BNY's relationship with Sentinel, (8) personnel files for eleven BNY employees, (9) the circumstances under which Sentinel became a BNY customer, (10) due diligence that BNY has conducted with respect to Sentinel, (11) the establishment of a custodial relationship between Sentinel and BNY, (12) BNY's policies and practices for opening its accounts in its Institutional Custody Division and in its Broker/Dealer Services Division, (13) BNY's credit risk guidelines and/or practices and procedures for accepting and/or evaluating new customers in its Institutional Custody Division, and in its Broker/Dealer

Interrogatory No. 4 delves into at least twenty-eight discrete inquiries.[4]  There is no discernable

single common theme contained within the subparts of Interrogatory No. 3 or Interrogatory No.

4, and the Trustee has never offered one, either in its negotiations with BNY or in its Motion to

Compel.  And the Trustee's suggestion that he used subparts merely for the sake of clarity, and

could overcome the prohibition against linking discrete subparts into one interrogatory simply by

using "commas or semi-colons and run the entire question together," Trustee's Br. at 4, is

---

Services Division, (14) the transfer of Sentinel's business from BNY's Institutional Custody Division to its Broker/Dealer Services Division, (15) transfer or wire instructions at two points in 1997, (16) the structure of Sentinel's accounts at BNY, (17) Sentinel's credit limits at BNY, (18) BNY's knowledge of Sentinel's business model, proprietary trading activities, use of BNY loan proceeds and the amount of leverage that Sentinel took on, (19) BNY's practices relating to maintaining files for loans provided to Sentinel, (20) BNY's loan files for Sentinel, (21) BNY's practices for maintaining knowledge of its customers and customer suitability requirements, and (22) the scope and applicability of certain contracts governing BNY's relationship with Sentinel.

[4]    Interrogatory No. 4 requests the identity of individuals with knowledge of the following subjects, linked only by the date range of January 1, 2002 to August 31, 2007:  (1) credit analysis, reviews, reports, or presentations prepared by or for BNY; (2) BNY's communications with Sentinel; (3) BNY's reviews of Sentinel's financial statements, trial balances, and CFTC Form 1-FRs, (4) "Net free equity" reports and other "calculations" prepared by BNY, (5) Sentinel's ability to pledge, and BNY's ability to accept, Sentinel's customer's securities as collateral, (6) BNY's internal audits of Sentinel or of BNY's relationship with Sentinel, (7) Communications regarding Sentinel at BNY involving BNY's compliance division, (8) BNY's external auditors' reviews of Sentinel accounts at BNY, (9) evaluations by regulatory authorities relating to BNY's (i) segregation and custodialization of customer accounts and funds, (ii) lending to FCMs and broker-dealers, and (iii) loans to Sentinel or similar businesses; (10) evaluations by regulatory authorities regarding BNY's relationship with Sentinel; (11) BNY's method of pricing securities used as collateral to secure Sentinel's loan, (12) the operation of Daylight Overdrafts and Overnight Loans made to Sentinel, (13) attempts by BNY and/or Sentinel to reduce Sentinel's loan balance in 2007, (14) loans made between May 1 and August 31, 2007, (15) BNY's decision to accept or reject certain types of collateral for Sentinel loans made between May 1 and August 31, 2007, (16) BNY's collateral and margin requirements for loans provided to Sentinel between May 1 and August 31, 2007, (17) transfers of Sentinel's customer securities made on 6 dates in 2007, (18) BNY's application of Sentinel reverse repurchase proceeds to reduce the Sentinel loan on August 14, 2007, (19) BNY's transfer of $52 million in securities on or about August 15, 2007, (20) documents regarding the Sentinel relationship that were prepared in connection with or reviewed in connection with the 2007 merger between The Bank of New York, Inc. and Mellon Financial Corporation, (21) BNY's communications with actual or potential Sentinel customers, (22) FX trading performed by BNY on behalf of Sentinel and/or its customers, (23) BNY's communications with the CFTC, NFA, and/or SEC regarding Sentinel, (24) the segregation requirements of the CEA and rules of CFTC and SEC in relation to Sentinel, (25) BNY's projected and annual revenue derived from its relationship with Sentinel, (26) Sentinel's sale of certain securities to Citadel Equity Fund Ltd. and/or Citadel Limited Partnership in August 2007, (27) BNY's clearing of repurchase transactions for Sentinel's segregated customer accounts, and (28) BNY's communications and records relating to Sentinel's repurchase agreement counterparties.

absurd.  *See, e.g., Nyfield*, 200 F.R.D. at 247 ("Extensive use of subparts, whether explicit or [not separately numbered or lettered], could defeat the purposes of the numerical limit contained in Rule 33(a) . . . by rendering it meaningless unless each subpart counts as a separate interrogatory.")[5]

### B.   Allowing the Trustee to Characterize His Interrogatories as Only Four Interrogatories Would Be Perverse.

As an initial matter, the Trustee completely misses the point when he argues that requiring BNY to provide responses to all of the subparts contained within Interrogatory No. 4 would promote efficiency, and that responding to it would not be overly burdensome or oppressive.  Trustee's Br. at 4-5.  As noted, during the meet and confer process, BNY expressly acknowledged the Trustee's claim that efficiencies that would result from responding to the remaining interrogatories, and agreed to provide responses to the remaining interrogatories, subject to three conditions that the Trustee rejected out of hand.[6]

More to the point, it would be inconsistent with the Federal Rules, and would ***not*** promote efficient discovery in this litigation, to permit the Trustee's approximately 52 separate inquiries to be counted merely as four interrogatories.  If the Trustee were permitted to serve twenty-five interrogatories as the Trustee would have this Court count them, BNY could face upwards of over ***500*** discrete subparts—a result that is plainly overly burdensome and oppressive.  *See Clark Equip. Co. v. Lift Parts Mfg. Co.*, No. 82 C 4585, 1985 WL 2917 at *7 (N.D. Ill. Oct. 1, 1985) (recognizing that given the potential for abuse of the discovery provisions

---

[5]     Notably, the Interrogatories closely mirror the 51 discrete document requests served by the Trustee on BNY in this action.  *See generally* Trustee's First Set of Document Requests, attached hereto as Ex. B.

[6]     If the Trustee were so concerned with efficiencies, he would have waited to file his Motion to Compel until he knew whether the parties would be able to resolve all of their currently-pending discovery disputes.

of the Federal Rules, federal courts "have not hesitated to limit discovery requests that were shown to be outside of the scope contemplated by the Rules, or overly burdensome or oppressive").

## II.     THE TRUSTEE'S REQUEST FOR LEAVE TO FILE IN EXCESS OF TWENTY-FIVE INTERROGATORIES IS IMPROPER

As BNY has repeatedly stated to the Trustee in their negotiations, BNY does not object to the Trustee's request to file in excess of twenty-five interrogatories, so long as (i) the Trustee agrees not to serve any additional interrogatories on BNY; (ii) the Trustee agrees to give BNY an equal number of interrogatories; and (iii) the Trustee agrees to exclude the topics covered by the Interrogatories from his Rule 30(b)(6) deposition notices (*i.e.*, the identity of those individuals with relevant knowledge of the issues identified in the Interrogatories). Given the Trustee's failure to meaningfully participate in negotiations with BNY on this issue, his request for this relief from the Court is a waste of the Court's and the parties' resources and contrary to the Court's case management procedures discouraging the filing of discovery motions. *See* Hon. James B. Zagel, Case Management Procedures, Discovery Motions, *available at* http://www.ilnd.uscourts.gov/home/Print_JudgePage.aspx.

## CONCLUSION

For all the foregoing reasons, BNY and The Bank of New York Mellon Corp. respectfully request that the District Court deny the Motion to Compel in its entirety, and grant any other relief that it deems just and proper.

Dated:  July 14, 2008

Respectfully submitted,

**THE BANK OF NEW YORK and**
**THE BANK OF NEW YORK MELLON CORP.**

By:   /s/ Sean T. Scott                              __
Sean T. Scott (ARDC #6273516)
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, Illinois 60606
(312) 782-0600

Brian Trust (admitted *pro hac vice*)
Hector Gonzalez (admitted *pro hac vice*)
Matthew D. Ingber (admitted *pro hac vice*)
MAYER BROWN LLP
1675 Broadway
New York, New York 10019
(212) 506-2500

**CERTIFICATE OF SERVICE**

Matthew V. Wargin, an attorney, hereby certifies that on the 14th day of July, 2008, he caused to be served, via email a true and correct copy of each of the **DEFENDANTS' OPPOSITION TO THE TRUSTEE'S MOTION TO COMPEL** upon (i) Chris Gair, J. Kevin McCall, Daniel Murray, Catherine Steege and Vincent E. Lazar, Jenner & Block, LLP, 330 N. Wabash Avenue, Chicago, IL 60611-7603, cgair@jenner.com, vlazar@jenner.com; jmccall@jenner.com; dmurray@jenner.com; and csteege@jenner.com; (ii) Frederick J. Grede, Chapter 11 Trustee, c/o Jenner & Block, LLP, 330 N. Wabash Avenue, Chicago, IL 60611-7603, c/o cgair@jenner.com; (iii) Roman Sukley, US Trustee's Office, Dirksen Federal Court House, 219 South Dearborn Street, Room 873, Chicago, IL 60604, Roman.L.Sukley@usdoj.gov; (iv) Mark Berkoff and Marc Fenton, DLA Piper US LLP, 203 North LaSalle Street, Suite 1900, Chicago, Illinois 60601-1293, marc.fenton@dlapiper.com and mark.berkoff@dlapiper.com; and (v) Susheel Kirpalani and Benjamin Finestone, Quinn Emanuel Urquhart Oliver & Hedges, LLP, 51 Madison Avenue 22nd Floor, New York, New York 10010, susheelkirpalani@quinnemanuel.com and benjaminfinestone@quinnemanuel.com. Registered members of the Court's CM/ECF system that are participants in these proceedings received electronic notice of this filing.

Dated: July 14, 2008                    /s/ Matthew V. Wargin, Esq.
                                        Matthew V. Wargin, Esq.

# EXHIBIT A

## Ingber, Matthew D.

| | |
|---|---|
| **From:** | Lin, Paula Garrett |
| **Sent:** | Wednesday, July 09, 2008 3:39 PM |
| **To:** | Kinney, John F. |
| **Cc:** | Ingber, Matthew D.; Gonzalez, Hector; Gair, Chris C; Blazejowski, Robert J; Wills, Melissa S. |
| **Subject:** | RE: SMG--BONY Responses to Trustee's First Set of Interrogatories |

John, we believe that your approach is not permitted by the Federal Rules, and you do not
have our agreement.

-----Original Message-----
From: Kinney, John F. [mailto:JKinney@jenner.com]
Sent: Wednesday, July 09, 2008 2:48 PM
To: Lin, Paula Garrett
Cc: Ingber, Matthew D.; Gonzalez, Hector; Gair, Chris C; Blazejowski, Robert J; Wills,
Melissa S.
Subject: RE: SMG--BONY Responses to Trustee's First Set of Interrogatories

Paula, we disagree with your suggestion that the Trustee is not acting in good faith.

Our interrogatories do not exceed the number permitted under Rule 33, and even if they do,
we clearly are entitled to this basic information regarding the identity of BONY personnel
who are most knowledgeable regarding the relationship and transactions with the Sentinel
that give rise to the Trustee's claims.

This clearly is information that will allow us to engage in more efficient and focused
discovery (in particular depositions), saving both your clients and ours time and money.

The conditions BONY wants to impose are unacceptable. We may need and want to pose further
interrogatories, and that has been our position from day one. Also, because we don't agree
that we have exceeded the limits in Rule 33, we cannot agree that BONY should have carte
blanche to serve whatever number of interrogatories it comes up with by incorrectly
counting subparts. If and when BONY needs to pose more than 25 interrogatories, it can
seek our agreement. If you believe that we unreasonably reject such a request, you can, of
course, seek leave of court to serve additional interrogatories.

Absent BONY's unconditional agreement by the close of business today to provide full and
complete substantive responses to our interrogatories, we will file a motion to compel.
John

-----Original Message-----
From: Lin, Paula Garrett [mailto:PLin@mayerbrown.com]
Sent: Wednesday, July 09, 2008 1:29 PM
To: Kinney, John F.
Cc: Ingber, Matthew D.; Gonzalez, Hector
Subject: FW: SMG--BONY Responses to Trustee's First Set of Interrogatories

John, I write in response to your July 2 email to Matthew Ingber.

As you know, we have objected to the Trustee's First Set of Interrogatories served in
Grede v. BNY (the "Trustee's interrogatories") on the ground, among others, that the
Trustee has exceeded the number of interrogatories permitted by the Federal Rules of Civil
Procedure, which do not permit the joining as "subparts" questions that seek information
about discrete separate subjects. Consistent with the Federal Rules, we concluded that the
Trustee's interrogatories contain approximately 52 discrete requests for identification of
BNY employees (some with additional subparts), and provided responses to the first 25
discrete requests for information contained within the interrogatories. When we initially
discussed the Trustee's interrogatories with you on June 18, you explained that the reason
you served so many requests on BNY was to lessen the need to rely on 30(b)(6) depositions
to gather this information. Therefore, notwithstanding that the Trustee's interrogatories
greatly exceeded the number permitted under the Federal Rules, and to comply with our
obligations to negotiate in good faith with the Trustee, on July 1 we proposed to answer
the remaining interrogatories, subject to the following conditions: (i) the Trustee agrees

not to serve any additional interrogatories on BNY in this action; (ii) the Trustee agrees to give BNY an equal number of interrogatories in this action; and (iii) the Trustee agrees to exclude the topics covered by the interrogatories from his 30(b)(6) deposition notices in this action.

In your July 1 email, you provided no indication to us why you have rejected our proposal. We believe that our proposal to you was extremely reasonable, and that we are entitled, as part of the parties' obligation to confer in good faith on discovery disputes, to an explanation why these conditions were unacceptable to the Trustee. By simply rejecting our proposal, the Trustee is not acting in good faith. Therefore, so that we can determine how to respond, please explain the basis or bases upon which you have rejected our proposal.

Thank you.


----- Original Message -----
From: Kinney, John F. <JKinney@jenner.com>
To: Ingber, Matthew D.
Sent: Wed Jul 02 16:03:29 2008
Subject: SMG--BONY Responses to Trustee's First Set of Interrogatories

Matt, we cannot accept the conditions you attached to BONY's providing substantive responses to all our interrogatories. Unless we hear otherwise by the COB on Wednesday, July 9, we will assume BONY does not intend to provide responses to the interrogatories to which it has objected and we will proceed accordingly. John

---

John F. Kinney
Jenner & Block LLP
330 N. Wabash Avenue
Chicago, IL 60611-7603
Tel (312) 923-2807
Fax (312) 923-2907
JKinney@jenner.com
www.jenner.com <http://www.jenner.com/ <http://www.jenner.com/> >

CONFIDENTIALITY WARNING: This email may contain privileged or confidential information and is for the sole use of the intended recipient(s). Any unauthorized use or disclosure of this communication is prohibited. If you believe that you have received this email in error, please notify the sender immediately and delete it from your system.

---

---

IRS CIRCULAR 230 NOTICE. Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties. If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.
This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| **SENTINEL MANAGEMENT GROUP, INC.,** | ) ) | **CASE NO. 07 B 14987** |
| Debtor. | ) ) | Hon. John H. Squires |
| | ) ) | |
| **FREDERICK J. GREDE,** as Chapter 11 Trustee for Sentinel Management Group, Inc., | ) ) ) | |
| Plaintiff, | ) ) | **ADV. NO. 08-00127** |
| vs. | ) ) | |
| **THE BANK OF NEW YORK** and **THE BANK OF NEW YORK MELLON CORP.,** | ) ) ) ) | |
| Defendants. | ) ) ) | |

**TRUSTEE'S FIRST SET OF DOCUMENT REQUESTS**

Frederick J. Grede, not individually but as Chapter 11 Trustee of Sentinel Management Group, Inc. ("Sentinel"), pursuant to Rule 34 of the Federal Rules of Civil Procedure and Rule 7034 of the Federal Rules of Bankruptcy Procedure, requests that The Bank of New York and The Bank of New York Mellon Corp. ("BONY") respond to the following document requests within 30 days of service.

**DEFINITIONS**

The following terms shall have the identified meanings for purposes of these Requests.

1645824

1.     "You," "your" and "BONY" includes defendants The Bank of New York and The Bank of New York Mellon Corp. and all of their employees, officers, agents, attorneys, representatives, subsidiaries, parents, affiliates, and others within their control.

2.     "Sentinel" means Sentinel Management Group, Inc. and its parents, subsidiaries, affiliates, predecessors, and successors, including, but not limited to, Sentinel Investment Group, Inc., Sentinel Financial Services, Inc., Sentinel Management International, Ltd., Fountainhead Investments, Inc., and Sentinel Asset Management, as well as their current or former officers, directors, employees, representatives, attorneys, agents, and any person acting on behalf of the foregoing, including, but not limited to, Philip M. Bloom, Eric A. Bloom, Theresa C. Arana, J. Matthew Keel, and Charles K. Mosley.

3.     "Defendant" means any person or entity named as a defendant in this adversary proceeding, Frederick J. Grede, as Chapter 11 Trustee for Sentinel Management Group, Inc., v. The Bank of New York and The Bank of New York Mellon Corp., Adv. No. 08-127.

4.     The following terms are used herein as they are defined and used in the complaint dated March 3, 2008 in this adversary proceeding: (a) SEG 1 segregated government securities account; (b) SEG 3 segregated government securities account; (c) Clearing/Collateral Account; (d) segregated SEG 1 DTC account; and (e) DTC Clearing Account.

5.     "Loan" includes any extension of credit, secured or unsecured, regardless of duration, whether denominated as a loan, overdraft, or otherwise.

6.     "Relating to," "in relation to," and "regarding" mean analyzing, containing, concerning, dealing with, constituting, defining, describing, discussing, embodying, evidencing, explaining, identifying, mentioning, reflecting, setting forth, showing, stating, summarizing, supporting, contradicting, or in any way pertaining to the subject matter of any Request.

2

1645824

7.    "Communication" includes all oral, written, or other exchange or transmission of information, regardless of whether made in person, by telephone, by electronic, or by any other means.

8.    "Document" is used herein in its broadest sense to encompass the full breadth of meaning permitted by the Federal Rules of Civil Procedure, and as used herein, it shall include all materials and tangible objects conveying or carrying spoken, visual, or literal substance, whether written, printed, typed, recorded, filmed, punched, transcribed, taped, produced, or reproduced by any means. The term "document" means and includes without limitation all correspondence, notes, records, reports, memoranda, journals, logs, diaries, appointment books, facsimiles, messages, videotapes, photographs, voice recordings, invoices, checks, bills, billing records, financial statements, balance sheets, ledgers, accounting entries, files, and any other data compilations from which information can be obtained, including materials used in trial preparations for any proceeding. The term "document" also means and includes all electronic documents and data, including without limitation, all e-mails (including the files attached thereto), electronic calendars, word processing documents, spreadsheets, presentation documents, archives, back up tapes discs or diskettes, CD-ROMs, DVDs, hard drives, laptops, personal computers, and voicemails. A draft or non-identical copy (including a copy with handwritten notations) is a separate document.

9.    "Voice recording" is used herein in its broadest sense to encompass the full breadth of meaning permitted by the Federal Rules of Civil Procedure, and as used herein, it shall include all recordings of communications, whether written, printed, typed, recorded, filmed, transcribed, taped, or reproduced by any means.

3

10.     The terms "and" and "or" should be read in the disjunctive, conjunctive, or both, consistent with an interpretation that results in the broadest disclosure of information.

## INSTRUCTIONS

1.     To the extent responsive documents or data are maintained in an electronic format, including, but not limited to, a disk, tape, or other magnetic or machine-readable format, please produce the electronic version along with manuals and all other documents sufficient to operate, display, read, and interpret the programs, documents, or data.

2.     All requested documents must be produced in their entirety, including all attachments and enclosures, and in their original folder, binder, or other cover or container. Whenever a document or group of documents is removed from a file folder, binder, file drawer, file box, notebook, or other cover or container, a copy of the label of such cover or other container must be attached to the document.  Electronic mail and other data or information stored or maintained electronically should be produced in original native electronic format in an unaltered condition from its original storage media.

3.     If you object to any part of these Requests, please (a) state each objection you assert in sufficient detail to permit the Court to determine the validity of the objection; and (b) produce all responsive documents and information to which your objection does not apply.

4.     If you claim that all or any part of any Request is vague or ambiguous, please identify the specific language you consider vague or ambiguous and state the interpretation of the language in question you used to frame your response.

5.     If more than one copy of a responsive document exists, produce each copy that includes (a) any notations or markings not on other copies, including handwritten notations or routing or filing instructions; and (b) attachments not included as part of other copies.

4

6.    If you withhold information or documents (including attachments to documents) responsive to these Requests based upon any claim of privilege, provide pursuant to Rule 26(b)(5) of the Federal Rules of Civil Procedure a log or index that includes at a minimum the following information on a document-by-document basis: (a) the specific privilege asserted or other particular reason you rely upon for not producing the document or information; (b) the date of the document and any different date when it was prepared; (c) the author, addressee and copyee of each document as well as any other recipient not identified on the face of the document; (d) the subject matter of the document or information withheld; and (e) the medium (*e.g.*, paper or electronic), type (*e.g.*, letter, memorandum, or presentation), and length of the document as well as the existence of any attachments if they are also being withheld as privileged.

7.    These Requests call for the production of all responsive documents in the possession, custody, or control of BONY or in the possession, custody, or control of any attorney for BONY, without regard to the physical location of such documents.  Without limiting the term "control," a document is deemed to be within your control if you have ownership, possession, or custody of the document, or the right to secure the document or copy thereof from any person or public or private entity having physical possession thereof.

8.    These Requests are continuing under Rule 26(e) of the Federal Rules of Civil Procedure.  If you obtain or become aware of additional documents responsive to these Requests after initially producing any requested documents, you are required to produce the additional documents promptly.

5

1645824

9.      These Requests cover the time periods and include documents created, prepared, written, dated, sent, received, applicable, or effective during or relating to the periods specified below.

10.      You should not produce any documents in response to these Requests that you have already produced to Sentinel.

11.      To the extent Sentinel-specific data is available and responsive to any of these Requests, such data should be produced as opposed to bank-wide data.

## DOCUMENT REQUESTS

**Unless otherwise indicated, the following Requests 1-24 cover the period and include documents created, prepared, written, dated, sent, received, applicable, or effective during or relating to the period January 1, 1997 to August 31, 2007:**

1.      All agreements between BONY and Sentinel.

2.      All BONY voice recordings relating to Sentinel, including, but not limited to, voice recordings of internal BONY communications, BONY communications with Sentinel, and BONY communications with third parties about Sentinel.

3.      All internal manuals representing and/or containing guidelines, standards, policies, procedures, and/or practices of BONY's Institutional Custody Division and its Broker/Dealer Services Division, including, but not limited to, regulatory compliance manuals.

4.      Excluding emails the sole purpose of which is to transmit regularly prepared reports such as bank-wide Daily Loan Reports, Daily Overdraft Reports, and Overnight Loan Reports, all emails, files, correspondence, memoranda, and notes relating to BONY's business with Sentinel for the following persons:

a.      Mark Aprahamian;

6

1645824

      b.      Stephen C. Brennan;

      c.      Joseph Ciacciarelli;

      d.      Even Fraser;

      e.      Bernard L. Lambert;

      f.      Terence R. Law;

      g.      Vincent A. Prestia;

      h.      Mark T. Rogers;

      i.      Brian A. Ruane;

      j.      Michael Scarry; and

      k.      Ronald Silk.

5.      Personnel files, including, but not limited to, employment and compensation agreements and annual or other periodic reviews for the following persons:

      a.      Mark Aprahamian;

      b.      Stephen C. Brennan;

      c.      Joseph Ciacciarelli;

      d.      Even Fraser;

      e.      Bernard L. Lambert;

      f.      Terence R. Law;

      g.      Vincent A. Prestia;

      h.      Mark T. Rogers;

      i.      Brian A. Ruane;

      j.      Michael Scarry; and

      k.      Ronald Silk.

6.     Documents sufficient to identify Futures Commission Merchants ("FCMs") for which BONY has performed or currently performs clearing and/or custody services, the agreements with those FCMs, and the structure of those FCM accounts at BONY.

7.     All documents relating to BONY lending guidelines, standards, policies, procedures, and/or practices for making loans or any other extensions of credit to FCMs and/or broker/dealers, including, but not limited to, those related to collateral for loans made to FCMs and/or broker/dealers.

8.     All documents relating to BONY guidelines, standards, policies, procedures, and/or practices regarding securities lending to FCMs and/or broker/dealers, including, but not limited to, those regarding the lending of securities owned by customers of such FCMs and/or broker/dealers.

9.     All records of any lending, credit, or executive or other committee meeting in which matters relating to Sentinel were discussed.

10.     Documents sufficient to identify the position or title and decision-making responsibilities of all BONY officers, employees, agents, and/or other personnel who were involved in the business relationship between Sentinel and BONY or who supervised the BONY officers, employees, agents, and/or other personnel who were responsible for the business relationship between Sentinel and BONY.

11.     All documents relating to the circumstances under which Sentinel initially became a BONY customer, including, but not limited to, any documents regarding BONY's preparation to bid on Sentinel's business, draft and final presentations to Sentinel, discussion documents, internal approvals or discussions authorizing solicitation of Sentinel accounts, correspondence, and memoranda.

8

12.     All documents relating to due diligence concerning any aspect of Sentinel or BONY's relationship with Sentinel conducted by or for BONY before and during the period Sentinel was a BONY customer.

13.     All documents relating to the establishment of the custodial relationship between Sentinel and BONY in 1997.

14.     All documents relating to BONY's guidelines, standards, policies, procedures, and/or practices for opening new customer accounts in its Institutional Custody Division and its Broker/Dealer Services Division.

15.     BONY's credit risk guidelines, standards, policies, procedures, and/or practices for accepting and/or evaluating new customers in its Institutional Custody Division and its Broker/Dealer Services Division.

16.     All documents relating to the transition of Sentinel's business within BONY from its Institutional Custody Division to its Broker/Dealer Services Division in or about 1997.

17.     All transfer or wire instructions issued or received by BONY when any Sentinel-related account was:

       a.     initially transferred to BONY in or about March 1997; and

       b.     transferred within BONY from its Institutional Custody Division to its Broker/Dealer Services Division in or about 1997.

18.     All documents explaining or describing the structure of Sentinel accounts at BONY and the relationship between or among those accounts.

19.     All documents relating to credit limits established by BONY for Sentinel and all changes in those credit limits initiated by BONY, including, but not limited to, results of any inquiries made by BONY regarding Sentinel's creditworthiness, licensing, registration, and/or professional qualifications.

1645824

20.    All documents relating to BONY's knowledge or understanding of Sentinel's business, Sentinel's use of the loan proceeds provided by BONY, Sentinel's proprietary trading activities, and the use and amount of leverage in Sentinel's securities portfolios and/or balance sheet.

21.    All documents relating to BONY guidelines, standards, policies, procedures, and/or practices for maintaining files relating to loans provided to Sentinel.

22.    BONY's complete loan files for Sentinel, including, but not limited to, general loan files regarding Sentinel, files regarding any loan made to Sentinel by BONY, and BONY risk management guidelines, standards, policies, procedures, and/or practices that applied to any loan BONY made to Sentinel.

23.    BONY guidelines, standards, policies, procedures, and/or practices for obtaining, maintaining, and updating knowledge of its customers and its customer suitability requirements.

24.    All documents relating to the scope and applicability of the following agreements between BONY and Sentinel:

   a.    Securities Clearing Agreement, dated October 21, 1997;

   b.    Security Agreement, dated October 21, 1997;

   c.    Global Clearing and Custody Agreement, dated January 9, 2003; and

   d.    Security Agreement, dated January 9, 2003.


**Unless otherwise indicated, the following Requests 25-51 cover the period and include documents created, prepared, written, dated, sent, received, applicable, or effective during or relating to the period January 1, 2002 to August 31, 2007:**

1645824

25.     Credit, account, and/or relationship reviews, analyses, reports, call reports, and/or presentations about Sentinel prepared by or for BONY.

26.     All documents relating to BONY reviews of Sentinel's audited and unaudited financial statements, trial balances, and CFTC Form 1-FRs.

27.     BONY Net Free Equity reports and/or calculations for Sentinel.

28.     All documents relating to Sentinel's ability to pledge, and BONY's ability to accept or otherwise use, Sentinel's customer securities as collateral for the loan BONY provided to Sentinel.

29.     All documents relating to BONY internal audits of Sentinel and/or internal audits regarding BONY's relationship with Sentinel, including, but not limited to, compliance by BONY and/or Sentinel with Sentinel customer fund segregation requirements.

30.     All documents relating to communications between BONY's Compliance Division and its Institutional Custody Division and/or Broker/Dealer Services Division regarding Sentinel.

31.     All documents relating to BONY's external auditors' review of any Sentinel account at BONY, including, but not limited to, the auditors' review of the segregation of Sentinel's customer accounts and funds, loans provided to Sentinel by BONY, and related securities lending activities, as well as the auditors' observations regarding the general adequacy of the segregation of FCM and broker/dealer customer funds, the custodialization of Sentinel assets or Sentinel customer assets, and the handling, oversight, and recordkeeping of related loans made to Sentinel.

32.     All documents relating to any evaluation by the Federal Reserve, New York State Banking Department, and/or other regulatory authority of the general controls and risk

management practices relating to BONY's segregation and custodialization of customer accounts and funds, lending to FCMs and broker/dealers, and loans to Sentinel and/or businesses of similar or comparable nature.

33.    All documents relating to Federal Reserve and/or New York State Banking Department audits, reviews, and/or evaluations regarding BONY's relationship with Sentinel, including, but not limited to, compliance by BONY and/or Sentinel with Sentinel customer fund segregation requirements, as well as observations by those regulatory agencies regarding BONY's general ability to segregate customer funds adequately and comply with related legal and regulatory requirements and discussions or comments by those regulatory agencies regarding loans made to Sentinel and/or Sentinel's daylight overdrafts.

34.    All documents relating to BONY's methodology of pricing securities posted for, taken as, or otherwise used for collateral to secure Sentinel's loan and/or overdrafts.

35.    Documents sufficient to explain the operation of Daylight Overdrafts and Overnight Loans made to Sentinel, including, but not limited to, the relationship between credit extended to Sentinel during the day and Sentinel loans booked overnight and the basis for pricing overdrafts and loans involving Sentinel.

36.    All documents relating to attempts by BONY and/or Sentinel to reduce Sentinel's loan balance during 2007, including, but not limited to, BONY's consideration of or response to Sentinel's efforts to reduce the loan balance.

37.    All documents relating to any loan BONY provided to Sentinel on each day between May 1 and August 31, 2007, including, but not limited to, the amount of the loan, collateral posted, taken, or otherwise used as collateral for the loan, loan approvals and any related internal discussions necessary for those approvals, and overdrafts.

38.     All documents relating to BONY's decision to accept or reject particular securities as collateral for any loan provided to Sentinel on each day between May 1 and August 31, 2007, including, but not limited to, BONY's policy regarding the acceptance of physical securities as collateral and BONY's acceptance or rejection of physical securities as collateral for the loan made to Sentinel.

39.     All documents relating to BONY collateral and margin requirements for any loan provided to Sentinel on each day between May 1 and August 31, 2007, including, but not limited to, any changes in the amounts of post-margin collateral and post-margin coverage ratio requirements.

40.     All documents relating to the following transfers of Sentinel customer securities:

    a.     approximately $87 million in securities from the SEG 1 and SEG 3 segregated government securities accounts into the Clearing/Collateral Account on or about June 1, 2007;

    b.     approximately $66 million in securities from the SEG 1 and SEG 3 segregated government securities accounts into the Clearing/Collateral Account on or about June 26, 2007;

    c.     approximately $170 million in securities from the segregated SEG 1 DTC account into the DTC Clearing Account on or about June 29, 2007;

    d.     approximately $84 million in securities from the segregated SEG 1 DTC account into the DTC Clearing Account on or about July 17, 2007;

    e.     approximately $248 million in securities from the DTC Clearing Account into the segregated SEG 1 DTC account on or about July 30, 2007; and

    f.     approximately $264 million in securities out of the Clearing/Collateral Account into the SEG 1 segregated government securities account on or about July 31, 2007.

41.     All documents relating to BONY's application of Sentinel reverse repurchase proceeds to reduce the Sentinel loan balance on or about August 14, 2007.

42.　　All documents relating to BONY's transfer of approximately $52 million in securities from a segregated customer account to the Clearing/Collateral Account on or about August 15, 2007.

43.　　All documents regarding BONY's relationship and/or transactions with Sentinel that were prepared or reviewed by any person as part of the due diligence conducted for the 2007 merger between The Bank of New York, Inc. and Mellon Financial Corporation.

44.　　All documents relating to BONY communications with actual or potential Sentinel customers, including, but not limited to, communications regarding the segregation of customer funds and/or securities, information about Sentinel, and Sentinel references.

45.　　All documents relating to FX trading performed by BONY on behalf of Sentinel and/or its customers.

46.　　All documents relating to BONY communications with the CFTC, NFA, and/or SEC regarding Sentinel.

47.　　All documents relating to the segregation and other requirements of the following CEA, CFTC, and SEC rules in relation to Sentinel:

  a.  Section 4(b) of the CEA (7 U.S.C. § 6b);

  b.  Section 4d(a)(2) of the CEA (7 U.S.C. § 6d(a)(2));

  c.  Section 4d(b) of the CEA (7 U.S.C. § 6d(b));

  d.  CFTC Rule 1.20 and its subdivisions (17 C.F.R. § 1.20 *et seq.*);

  e.  CFTC Rule 1.25 and its subdivisions (17 C.F.R. § 1.25 *et seq.*);

  f.  CFTC Rule 1.26 (17 C.F.R. § 1.26);

  g.  CFTC Rule 1.49 (17 C.F.R. § 1.49);

  h.  CFTC Rule 30.7 (17 C.F.R. § 30.7); and

  i.  SEC Rule 206(4)-2 (17 C.F.R. § 275.206(4)-2).

48.     All documents relating to BONY's projected and actual revenue derived from Sentinel's business, including all sources of projected and actual revenue (including, but not limited to, interest revenue, service revenue, securities lending revenue, and revenue from all other fees and sources) and all methods of projecting and recording such revenue.

49.     All documents relating to Sentinel's sale of certain securities to Citadel Equity Fund, Ltd. and/or Citadel Limited Partnership in August 2007, including, but not limited to, the basis for determining the approximate value of those securities and the adequacy of the Citadel entities' proceeds in relation to the value of those securities.

50.     All correspondence, memoranda, notes, and emails relating to BONY's clearing of repurchase transactions for Sentinel's segregated customer accounts.

51.     All BONY communications and records relating to Sentinel's repurchase agreement counterparties, including, but not limited to, internal BONY communications, BONY communications with Sentinel, and BONY communications with Sentinel's repurchase agreement counterparties.

1645824

Dated:  April 29, 2008

Respectfully submitted,

FREDERICK J. GREDE, not individually but
as Chapter 11 Trustee of Sentinel Management
Group, Inc.

By: _____
       One of his attorneys

John F. Kinney (ARDC # 1467867)
Chris C. Gair (ARDC # 6190781)
Vincent E. Lazar (ARDC # 6204916)
JENNER & BLOCK LLP
330 N. Wabash Ave.
Chicago, IL  60611
Phone: (312) 222-9350
Facsimile: (312) 527-0484

16

1645824

## CERTIFICATE OF SERVICE

I, Stephanie Reinhart, an attorney, hereby certify that I caused the foregoing **Trustee's**

**First Set of Document Requests** to be served by electronic mail this 29th day of April, 2008

upon:

Hector Gonzalez                          Sean T. Scott
Matthew D. Ingber                        71 S. Wacker Drive
1675 Broadway                            Chicago, IL 60606
New York, NY 10019                       (312) 782-0600
(212) 506-2500

                                         _____
                                         Stephanie Reinhart

17

1645824