# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FREDERICK J. GREDE, not individually but as Liquidation Trustee of the Sentinel Liquidation Trust, | |
| Plaintiff, | No. 08 C 2582 |
| v. | Judge James B. Zagel |
| THE BANK OF NEW YORK and THE BANK OF NEW YORK MELLON CORP., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

On March 3, 2008, Plaintiff Liquidation Trustee filed a complaint against Defendant Bank alleging several counts: (1) avoidance and recovery of fraudulent transfers pursuant to §§ 548(a)(1)(A) and 550(a) of the Bankruptcy Code; (2) avoidance and recovery of fraudulent transfers pursuant to 740 ILCS 160/5(a)(1) and 160/8(a), and §§ 544(b)(1) and 550(a) of the Bankruptcy Code; (3) avoidance and recovery of preferential transfers pursuant to §§ 547(b) and 550(a) of the Bankruptcy Code; (4) equitable subordination of claims and transfer of subordinated lien pursuant to § 510(c) of the Bankruptcy Code; (5) disallowance of proof of claim; (6) equitable disallowance of proof of claim; (7) action to determine validity and extent of lien and for turnover of property under 11 U.S.C. §§ 542 and 506; and (8) aiding and abetting/knowing participation in breach of fiduciary duty by Sentinel insiders.

On May 2, 2008, Defendants filed a motion to dismiss Plaintiff's complaint, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6). The motion was granted as to Counts V-VII,

and denied as to the remaining counts. In my opinion memorandum, I invited Plaintiff to amend Count VIII, which was inadequately pled. On March 19, 2009, Plaintiff amended Count VIII of his complaint, and included Counts V-VII in the amended complaint. Because the Trustee's inclusion of these counts is not a request that I revisit my prior rulings, but rather an attempt at preserving its right to appeal my ruling on those counts, I need not address Counts V-VII here. My discussion will be limited to Count VIII. Because the facts relevant to Count VIII are summarized in my previous opinion, *Grede v. Bank of New York*, No. 08 C 2582, 2009 WL 188460 (N.D. Ill. 2009), they will not be recounted here.

## II. STANDARD OF REVIEW

A Rule 12(b)(6) motion tests the sufficiency of a complaint, not the merits of a case. *Autry v. Northwest Premium Servs., Inc.*, 144 F.3d 1037, 1039 (7th Cir.1998). I must accept all well-pleaded factual allegations in the complaint as true, drawing all reasonable inferences from those facts in Plaintiff's favor. *Cleveland v. Rotman*, 297 F.3d 569, 571 (7th Cir.2002). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotations omitted). Plaintiff's factual allegations must be sufficient "to raise a right to relief above the speculative level." *Id.* To survive, a complaint must contain enough facts, when, accepted as true, "state a claim to relief that is plausible on its face." *Id.* at 570.

## III. DISCUSSION

In Count VIII of his complaint, Plaintiff alleges that Defendant Bank of New York ("BONY") colluded with Sentinel insiders Philip Bloom, Eric Bloom and Charles Mosley, aiding and abetting their breaches of fiduciary duty to Sentinel. The Blooms and Mosley, Plaintiff claims, commingled customer securities and funds with Sentinel's own house account, commingled securities and funds of certain segregated accounts with those of other segregated accounts, improperly pledged customer assets to secure a loan from BONY, maintained customer funds and securities in accounts not registered to Sentinel as agent or trustee, and transferred and pledged segregated securities to collateralize BONY loans. Plaintiff maintains that as a result of BONY's knowing participation in these breaches of fiduciary duty by Sentinel insiders, Sentinel has been damaged.

In response, BONY has sought the shield offered under New York law, which gives the claim for defrauding a corporation with the cooperation of management to the creditors of the corporation, not to the guilty corporation itself, in this case, Sentinel and its trustee. *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 120 (2d Cir. 1991). "The rationale underlying the *Wagoner* rule derives from the fundamental principle of agency that the misconduct of managers within the scope of their employment will normally be imputed to the corporation." *In re CBI Holding Co., Inc.*, 529 F.3d 432, 448 (2d Cir. 2008) (citation omitted). However, "management misconduct will not be imputed to the corporation if the officer acted entirely in his own interests and adversely to the interests of the corporation." *Id.* (citation omitted). This is known as the adverse interest exception. In order for it to apply, "the guilty manager must have totally abandoned his corporation's interests[.]" *Id.* (citation omitted).

3

The adverse interest exception is itself subject to another exception known as the "sole actor" rule. *The Mediators, Inc. v. Manney (In re Mediators, Inc.)*, 105 F.3d 822, 827 (2d Cir. 1997). Where "principal and agent are one and the same," the agent's knowledge is imputed to the principal regardless of whether the agent has abandoned the corporation's interest. *Id.*

> Where only some of a corporation's owners were involved in a fraud in their role as managers, courts consider whether those insiders who were innocent and unaware of the misconduct had sufficient authority to stop the fraud. When the innocent insiders lack authority to stop the fraud, the "sole actor" exception to the "adverse interest" exception applies, and imputation is thus proper, because all relevant shareholders and decisionmakers were involved in the fraud. However, when the innocent insiders possessed authority to stop the fraud, the "sole actor rule" does not apply, because the culpable agents who had totally abandoned the interests of the principal, and were thus acting outside of the scope of their agency, were not identical to the principal.

*In re CBI Holding Co., Inc.*, 311 B.R. 350, 373 (S.D.N.Y. 2004), *aff'd in part, rev'd on other grounds by In re CBI Holding Co., Inc.*, 529 F.3d 432. Therefore, Sentinel's trustee cannot sue BONY if some corporate purpose was served by the breach of duty, and all the persons with authority to prevent the breach participated in it. Conversely, if no corporate purpose was served by the breach, and there were innocent insiders who had sufficient authority to stop the fraud, the Trustee has standing to make its claim on behalf of Sentinel.

In my previous ruling, I rejected Defendants' assertion that Plaintiff failed to adequately plead BONY's knowing and substantial assistance to the insiders. *Grede v. Bank of New York*, 2009 WL 188460, at *9. The deficiency of the initial pleading of Count VIII was rooted instead in Plaintiff's failure to adequately allege the existence of innocent Sentinel insiders with

4

authority to stop the breach. In attempting to cure the defect, Plaintiff added the following amendment to his complaint:

> There were at all relevant times one or more officers, directors, and/or employees of Sentinel who were not part of the Sentinel Insiders' scheme, including Sentinel Senior Vice President and Sales Manager Steven Stitle and Sentinel Senior Vice Presidents George Gargano, Stanley Finer, and Joseph Igoe. Each of those individuals possessed the ability to stop or prevent the fraudulent scheme and could have and would have stopped the fraudulent scheme had they known about it by, among other things, informing the CFTC, SEC, and/or NFA of the Sentinel Insiders' and BONY's regulatory violations and misuse of assets that should have been segregated for customers. Because the Sentinel Insiders' scheme involved egregious regulatory violations, regulators would have either shut down Sentinel or required it to achieve compliance with regulatory requirements. In either event, the Sentinel Insiders' scheme would have been stopped in its tracks within a matter of days.

Defendant moves to dismiss Count VIII as amended, arguing that Plaintiff has once again failed to adequately allege the existence of innocent insiders with authority to stop the fraud as well as the total abandonment of Sentinel's interest by the Blooms and Mosley. Either pleading deficiency dooms the claim.[1] Because Plaintiff has failed to adequately plead the existence of an innocent insider, I need not address the issue of whether Plaintiff adequately alleged the abandonment of Sentinel's interests.[2]

---

[1] If Plaintiff has not properly pled the total abandonment of Sentinel's interest by the Insiders, then *Wagoner* applies and the adverse interest exception does not come into play, thereby rendering the existence of innocent insiders irrelevant. If Plaintiff properly pleads abandonment but fails to adequately allege the existence of innocent insiders, then the "sole actor" exception to the adverse interest exception applies, and the Trustee lacks standing.

[2] In his response, Plaintiff acknowledges my earlier ruling that New York law governs this count, *Grede*, 2009 WL 188460, at *9, but nonetheless argues that it should not. According to Trustee, he did not have "sufficient opportunity to fully address the issue" in briefing his response to Defendants' first motion to dismiss, and had he been able to do so, he would have argued, as he does now, that a proper choice-of-law analysis requires the application of Illinois

**The Existence of Innocent Insiders**

Defendants argue that Plaintiff fails to adequately plead the existence of innocent insiders where he alleges that certain innocent employees might have prevented the fraud, had they known of it, by informing relevant regulatory authorities. This "whistleblower theory," Defendants claim, is insufficient as a matter of law. The innocent insiders must have the *authority* to stop the fraud in order to avoid *Wagoner*. In support of their argument, Defendants rely primarily on *In re Bennett Funding Group (Bennett II)*, 336 F.3d 94, 101 (2d Cir. 2003). In that case, the court noted precedent holding "that imputation applies unless at least one decisionmaker in a management role or amongst the shareholders is innocent *and* could have stopped the fraud." (citing *In re CBI Holding Co., Inc.*, 311 B.R. at 365) (emphasis in original). Where the guilty insiders were "in control of every aspect of every activity within the [ ] empire, including the fraud," and "each so-called independent director was impotent to actually do

---

law. However, Plaintiff did address the issue in his first response, arguing, in sum, "Sentinel's place of business was Illinois, Sentinel's injuries were suffered in Illinois, and the underlying fiduciary duties whose breach the Trustee alleges BONY aided and abetted arose under Illinois law. Accordingly, Illinois law governs the Trustee's claim, and the Wagoner rule, which Illinois law does not recognize, does not apply." In his response to Defendant's motion currently before me, Plaintiff submits that "BONY's liability stems from its knowingly participating in and assisting the Insiders' breaches of duty and would exist even if there were no contracts between Sentinel and BONY." As BONY points out, Defendants' liability for aiding and abetting the Insiders' alleged breaches depends upon Defendants' actions pursuant to its contractual agreements with Sentinel and representations made in those agreements regarding Sentinel's clients' funds and securities. As I said in my previous ruling, Trustee's aiding and abetting claim arises out of a contractual relationship between the Bank and Sentinel, and involves conduct that would not, in any practical sense, have ever occurred without the contracts. *Id.* Because I have already considered and rejected Trustee's choice-of-law analysis, I see no need to address it further here.

anything[,]" the trustee could not avoid *Wagoner* and his claims against the corporation's accountants and attorneys were barred. *In re Bennett Funding Group*, 336 F.3d at 101.

Trustee in response cites two cases - *In re Monahan Ford Corp. of Flushing*, 340 B.R. 1, 25 (E.D.N.Y. 2006), and *In re Sharp Int'l v. KPMG*, 319 B.R. 782, 789 (E.D.N.Y. 2005) - for the proposition that *Wagoner* is avoided where innocent insiders would have reported the wrongdoing to regulators. However, in neither case does the court reach the issue of whether the whistleblower theory is sufficient. In the two cases, Judge Craig, in discussing *Bennett II*, noted that "each so-called independent director," who "had no authority except as given to them by the [guilty insiders]," 336 F.3d at 98, could have notified the SEC about the fraud committed by the guilty insiders, but "none of them were able to testify that they would have done so, and in any event, '[i]t is unclear whether such insiders would have had the legal ability to approach third-parties with information about the Ponzi scheme.'" *In re Monahan*, 340 B.R. at 25 (citing *Breeden v. Kirkpatrick & Lockhart, LLP* (*Bennett I*), 268 B.R. 704, 713 (S.D.N.Y. 2001)), *In re Sharp*, 319 B.R. 782, 789 (citing *Bennett I*, 268 B.R. at 713)). Neither *Bennett II*, *In re Monahan*, nor *In re Sharp* held that innocent employees who would have blown the whistle to regulators had they known about the fraud could save the trustee from the sole actor rule.

Aside from *In re Monahan* and *In re Sharp*, Plaintiff cites no other authority in support of the whistleblower theory and with good reason. As Defendants correctly point out, to validate the theory would mean that any innocent "authority-lacking employee - regardless of her level of seniority" who would have reported an insider fraud to regulators would be an innocent insider for the purposes of *Wagoner*. Such a rule is inconsistent with *Wagoner* and its exceptions. *Wagoner* precludes the trustee from pursuing a claim that the corporation itself could not pursue.

7

Where those who control the corporation participated in a fraud against it, the corporation can have no claim against alleged third-party cooperators in the fraud, since the guilty insiders and the corporation are one and the same. However, where there remains one innocent insider with some control over the company, the guilty insiders and the corporation are no longer one and the same. But in the absence of such an innocent insider, the existence of an innocent authority-lacking employee willing to blow the whistle does not sever the unity of the guilty insiders and the corporation. Under those circumstance, the insiders that control the company know of the fraud, and, under *Wagoner*, this knowledge would be imputed to the company, precluding it from pursuing the claim. The presence of the authority-lacking innocent insider would not alter this equation.

> [E]ven assuming that these innocent insiders would have exposed the fraud, the trustee still lacks standing because, as already noted, these insiders were all impotent and irrelevant for the purposes of applying the Wagoner rule. The Fifth Circuit Court of Appeals best summarized the deficiencies in the trustee's contention that a third-party could have saved the company, or at least lessened [the company's] insolvency, if made aware of the fraud: "This argument is flawed because .... [the company] cannot claim it should recover from [defendant auditors] for not being rescued by a third-party for something [the company] was already aware of and chose to ignore." *FDIC v. Ernst & Young*, 967 F.2d 166, 171 (5th Cir. 1992). In summary, because [the company's] injury is traceable to its own dominant management, the trustee lacks standing to pursue claims on [the company's] behalf against defendants.

*Bennett I*, 268 B.R. at 714. Plaintiff cannot claim that it should recover from BONY for a fraud of which its management, and therefore Sentinel, was already aware. Because Plaintiff failed to

adequately allege the existence of an innocent insider with the authority to stop the breach, Defendants' Motion to Dismiss Count VIII is granted.[3]

ENTER:

_____
James B. Zagel
United States District Judge

DATE: June 12, 2009

---

[3] In my previous ruling, I expressed skepticism with regard to Trustee's arguments that no corporate purpose was served by the BONY loans to Sentinel. *Grede*, 2009 WL 188460, at *9. However, assuming that Sentinel could adequately plead the existence of an innocent insider with authority to stop the fraud, I was willing to let the claim stand, since the case will be proceeding on the surviving counts, and invited the parties to address the *Wagoner* issue promptly, perhaps by summary judgment. *Id.* But since Sentinel has not met the pleading requirements as to the innocent insider, Count VIII cannot survive, and there is no need to revisit the issue of benefit to Sentinel.